[S. F. No. 11931. In Bank.—July 31, 1928.]

STANDARD LIVESTOCK COMPANY (a Corporation), Appellant, v. WILLIAM R. PENTZ, Respondent.

Preston & Duncan and Robert Duncan for Appellant.

Pillsbury, Madison & Sutro, Marshall P. Madison and Frank D. Madison for Respondent.

RICHARDS, J.—The plaintiff herein appeals from a judgment rendered and entered after a directed verdict in the defendant's favor. The action is one for the recovery of both general and special damages for the breach of the

implied covenant of quiet enjoyment in a lease executed by the defendant on November 1, 1917, to the assignor of the plaintiff, and covering a large tract of land in the county of Mendocino, chiefly adapted to the raising and breeding of stock. The plaintiff in its second amended complaint sets forth said lease in full and also sets forth the written assignment thereof from one P. B. Noonan, the original lessee named therein, to the plaintiff, together with the written consent to such assignment on the part of the lessor. The plaintiff further avers its entry upon said premises under said lease and the performance by it of all of the covenants and agreements therein to be by it performed prior to its eviction from the premises covered thereby; and also avers its various acts and expenditures in the way of stocking and operating said premises as a stock ranch up to the time of its eviction therefrom. The plaintiff then proceeds to allege that at the time of the making and execution of said lease there were in existence two mortgages made and executed by a prior owner of said premises and then held and owned by the First Federal Trust Company, a corporation; that said mortgages and the moneys due thereon not having been paid, the said mortgagee, on November 6, 1918, commenced an action for the foreclosure thereof in the superior court in and for the county of Mendocino, to which action both the plaintiff and the defendant herein were made parties, together with certain other defendants; that in due course in said action a decree of foreclosure and sale was duly given and made, under the terms of which the whole of said premises was sold to one W. H. Sullivan on the eighth day of November, 1919; that a deed thereto was in due course, one year later, executed and delivered to said W. H. Sullivan as the purchaser at said judicial sale; that thereupon the said purchaser demanded of the plaintiff herein that it surrender and abandon the possession of the whole of said leased premises to the said purchaser, and this demand being refused, the said W. H. Sullivan applied to and procured from the said superior court a writ of assistance, under which writ, in the hands of the sheriff of said county, the plaintiff herein, with all of its properties then upon said premises, was ejected and removed from said premises and the whole thereof on the twenty-eighth day of February, 1921, and

the said plaintiff and its said properties have ever since been excluded therefrom; that said plaintiff resisted said eviction, by all of the legal means within its power, unsuccessfully. The plaintiff then alleges that the defendant herein at all times knew of the existence of said superior mortgages of the First Federal Trust Company and of the institution of said action for the foreclosure thereof. The plaintiff then proceeds to allege that under the terms of section 1927 of the Civil Code the lessor of said premises was obligated to secure to the plaintiff herein, as the assignee of said lease, the quiet possession of said premises against all persons lawfully claiming the same, and that such obligation became and was a part of said lease; that the plaintiff herein, immediately upon the commencement of said foreclosure action, notified the defendant herein, as such lessor thereof, and demanded that he maintain and keep the plaintiff herein in the quiet and peaceable possession of the whole of said leased lands and premises; that said defendant not only failed so to do, but, on the contrary, united with The Bank of California National Association, a corporation, and a co-defendant in said foreclosure action, in filing a cross-complaint in said action, wherein the plaintiff herein was also made a cross-defendant, and wherein it was alleged that the plaintiff herein claimed some right, title, or estate in the property described in said lease and in said action, but that such claim was subsequent and subject to the right, title, interest, and estate of said corporation and also the defendant herein as the said cross-complainants in said foreclosure action; that the plaintiff herein was obliged to appear in said action to defend itself against said cross-complaint; that when said cause came to trial upon the original complaint, and also upon said cross-complaint, it was adjudged and decreed by said court that the lease of the plaintiff herein was in full force and effect at the date of said decree and was prior to and superior to the right of the said Bank of California National Association and of the defendant herein, as asserted in their said cross-complaint, but was subject and subordinate to the right of the First Federal Trust Company, the original plaintiff in said foreclosure suit. The plaintiff further alleges that it had paid all of the rents due and owing under the provisions of said lease up to and including the thirtieth day of Novem-

ber, 1918; that upon the institution of said foreclosure action the plaintiff herein offered and agreed to pay to the defendant herein the rents subsequently to accrue under the terms of said lease, provided said defendant would protect and agree to protect the plaintiff herein in the quiet and peaceable possession of said leased premises against said foreclosure action and the claims of the plaintiff therein thereunder, but that the defendant herein failed and refused so to do. The plaintiff then proceeds to allege, with much of detail, the damages, both general and special, which it sustained as the result of its aforesaid eviction from said leased premises, both as to the loss of the value of its said term and of the particular losses which it suffered in the way of the destruction of and detriment to its property due to said eviction, and the hardships with which it was executed and attended. It is not necessary to refer to these averments with much of detail for the purposes of this decision, but as a result thereof it is sufficient to state that the plaintiff herein prayed for general and special damages in the aggregate sum of $112,214.

The defendant in his answer to the plaintiff's second amended complaint admits the making and execution of said lease, the assignment thereof to the plaintiff, his consent to said assignment, the possession thereof of the plaintiff thereunder and the eviction of the plaintiff from the premises by the holder of a superior title, as set forth in the plaintiff's said complaint, and denies most of the other averments therein contained. The defendant alleges that in the making and execution of said lease to the original lessee, and in the consent to the assignment thereof to the plaintiff, he was acting throughout not as the owner of said premises but at all times as the agent and representative of one L. B. McMurtry, and was known by the said original lessee so to be and so to be acting. He denies, for want of information and belief, practically all of the plaintiff's averments with respect to its operation of and expenditures upon said premises, as well as its alleged losses incident to its eviction therefrom. In addition to its foregoing denials the defendant pleads the following special defenses: He alleges that the plaintiff's cause of action is barred by the provisions of section 337, subdivision 1, section 338, subdivision 1, and section 339, subdivision 1, of the Code of Civil Procedure. He sets

forth certain affirmative matter intended to show that the plaintiff's assignor, in taking said lease, did not deal with said defendant as the owner of said premises, but solely as the agent and representative of L. B. McMurtry, the real owner thereof, prior to and at the time of the execution of said lease and of the assignment thereof. He then proceeds to plead certain facts with relation to the proceedings in the action for the foreclosure of the mortgage of the First Federal Trust Company upon said premises, and as to the pleadings, proceedings, and judgment rendered and entered in said action, which are averred to have the effect of *res. adjudicata* upon the asserted rights of the plaintiff in the present action. He further pleads the pendency of another action instituted by the plaintiff herein against The Bank of California National Association, and which it is averred operates as an estoppel against the said plaintiff as to its maintenance of the present action. He therefore prays that the plaintiff take nothing by this action and that he go hence with his costs. The plaintiff filed a general and special demurrer to the defendant's said answer and to each of the affirmative matters set forth therein, which, upon hearing thereon, the trial court overruled. The cause then came to trial before a jury, in the course of which the plaintiff offered and there was received, over objection, a large amount of evidence having more particular relation to the elements of damage, both general and special, which the plaintiff was seeking to recover. At the conclusion of the plaintiff's case the defendant moved the court for a nonsuit upon several grounds. He also moved to strike out all of the evidence offered and admitted under objection on behalf of the plaintiff and having reference to the various elements of damage claimed to have been suffered by it as a result of its eviction from the leased premises. In connection with said motions it was stipulated that the judgment-roll in the case of *First Federal Trust Co.* v. *McMurtry et al.*, might be introduced in evidence. The court denied the defendant's motion for a nonsuit, whereupon the defendant moved the court for a directed verdict in the defendant's favor upon all of the grounds theretofore made and argued upon its previous motions. The trial court then proceeded to grant the defendant's aforesaid motion to strike out so much of the plaintiff's offered evidence as had relation to

its averments of the value of the plaintiff's term under said lease and to its special losses as a result of its eviction. The trial court also granted the defendant's motion for a directed verdict in his favor, and directed the jury to return such verdict, which, having been so returned, the court made and entered its judgment accordingly in the defendant's favor. From such judgment the plaintiff has taken and now prosecutes this appeal.

We shall first consider the special defenses which the defendant pleaded and urged at the trial and upon his motion for a directed verdict and which he insists upon here; since if these should be sustained the judgment, regardless of other matters in issue, must be affirmed. The defendant urges that the plaintiff's action was barred by the provisions of several sections and subdivisions of the Code of Civil Procedure. These all have relation to the time when the plaintiff's right of action arose. It is the respondent's contention that the breach of any of the lessor's obligations, under the provisions of section 1927 of the Civil Code, to insure to the lessee quiet possession of the leased premises during the term thereof against all persons lawfully claiming the same, occurred upon the institution of the foreclosure proceeding wherein the plaintiff in that action asserted a superior right to that of both the lessor and lessee of the premises in question; and that such asserted breach occurred upon the filing of the complaint in the foreclosure action on November 6, 1918, and since the plaintiff herein did not institute the present action until February, 1923, its action was barred by the aforesaid provisions of the Code of Civil Procedure, and particularly by section 338, subdivision 1 of said code. There is no merit in this contention, nor do the authorities cited in the respondent's brief sustain it. The law is too well settled to require extensive comment or citation of authority that the covenant of quiet possession in a lease is not breached until there has been an actual or constructive eviction. The rule upon this subject is stated with sufficient citation of authority in the case of *McCormick* v. *Marcy*, 165 Cal. 386, 389 [132 Pac. 449, 450], wherein it is said: "There is no breach of the covenant for quiet and peaceable possession of land until there has been an eviction by the true owner or an assertion by him of his paramount right in such a manner that the

holder through the covenantor is compelled to yield possession or buy the outstanding superior title. (Citing cases.) As no cause of action accrues until a breach occurs. it follows that the statute of limitations upon an action for a breach of this covenant begins to run only from the time of such breach.'' In this case the plaintiff's actual eviction occurred on February 28, 1921. It commenced this action on February 28, 1923. The provisions of section 1927 of the Civil Code were, as we have already seen, read into the lease of plaintiff's assignor and hence constituted the covenant of quiet possession upon which the lessee and his assigns were entitled to rely until disturbed by an actual eviction. The plaintiff's action was thus commenced in time under any of the pleas of the statute of limitations urged by the respondent herein.

█ The next affirmative defense relied upon by the respondent herein is that one L. B. McMurtry was at all times prior to the plaintiff's eviction the owner of the premises in question and that the plaintiff's assignor well knew this fact and also the fact that while the defendant Pentz at the date of the execution of said lease held a deed to said premises from said McMurtry, he was in fact and to the knowledge of all parties merely the agent and trustee of McMurtry; and hence that the plaintiff's cause of action, if any, was against McMurtry and not against the defendant herein. The facts as shown by the record herein are that some time prior to the date of the execution of said lease McMurtry had deeded the premises covered thereby to the defendant Pentz and had thereafter taken from said Pentz a sublease of said premises; that in the making of the lease in question to Noonan, the assignor of the plaintiff herein, Pentz purported to act as the owner of said premises; that he executed said lease as such and as a principal party thereto and not as an agent or trustee of any other person; that in letters which passed between himself and his immediate lessee authorizing the assignment thereof by the latter to the plaintiff herein Pentz described himself as ''the owner of Ridgewood Ranch.'' The lease itself contains nothing to indicate that Pentz was executing the same other than as the owner of the premises described therein, nor did the defendant offer any proof upon the trial that either the immediate lessee or its assignee, the plaintiff herein, had

any knowledge that Pentz in the execution of the same was acting otherwise than as the owner of the leased premises. In California Jurisprudence, volume 1, page 819, it is said that "the rule has been long and continuously settled that an agent who signs in his own name instead of that of the principal, when he intends to bind the latter, becomes himself liable, the contract being considered his own." In the case of *Hall* v. *Jameson*, 151 Cal. 606 [121 Am. St. Rep. 137, 12 L. R. A. (N. S.) 1190, 91 Pac. 518], the rule is thus stated: "Where an agent makes a contract really on behalf of his principal, which purports to be his promise and to bind himself alone, and he has not in fact any authority to make that particular contract for his principal, the general rule is that the agent will be personally bound by the contract, notwithstanding his lack of personal interest in the consideration. He will be conclusively presumed to have intended to bind himself." The following cases uphold the same doctrine: *Gambrill* v. *Dworack*, 58 Cal. App. 524 [208 Pac. 995]; *Kerry* v. *Pacific Marine Co.*, 121 Cal. 566 [66 Am. St. Rep. 65, 54 Pac. 89]; *Estrella Vineyard Co.* v. *Butler*, 125 Cal. 232 [57 Pac. 980]; 10 Cal. Jur., p. 617, and cases cited. In the case of *Standard Livestock Co.* v. *Bank of California*, 67 Cal. App. 381 [227 Pac. 962], it was decided that where a contract must be in writing under the statute of frauds and has been executed by a party thereto as a principal, no one else can be held thereon as a principal except by proof that such other person has authorized in writing such contract. There is no such showing in this case. The respondent's contention in this behalf is without merit and the plaintiff's demurrer to this affirmative defense should have been sustained.

The next affirmative defense which the defendant pleaded in the trial court and urges upon this appeal is the defense of *res judicata*. The defendant in his answer and in furtherance of this plea set forth the facts showing the institution of the foreclosure action by the First Federal Trust Company, in which action the plaintiff and the defendant in the instant action were made defendants, and that there were also certain other co-defendants, including L. B. McMurtry, the original mortgagor, and the Bank of California, etc., a later encumbrancer; that the plaintiff herein appeared in said action and set forth the existence

and terms of its lease therein and asked to have the same established and its rights against certain subsequent lienholders protected therein. The trial court in that action took cognizance of the plaintiff's said lease and adjudged it to have precedence over said subsequent lien claimant. It is the contention of the respondent herein that the plaintiff herein ought there and then to have asserted its claims for reimbursement for the injuries it had suffered or might thereafter suffer as a result of the defendant's breach of his covenant of quiet possession; and that not having done so in that action, in which both the plaintiff and the defendant herein were parties, it is estopped by the judgment therein to assert its claims for such damages in the instant case. The difficulty with the respondent's contention in the foregoing regard is that prior to and up to the time of the entry of judgment in that action and of the plaintiff's eviction from said premises as a consequence thereof it had sustained no damages for the reason that there had occurred no breach of the covenant of quiet possession upon which it was entitled to rely; that by virtue of such covenant and the obligation of its lessor thereunder it had a right to assume that its co-defendant, said lessor, would protect his covenant by paying off or otherwise compounding with the holder of the superior right so as to avoid the breach of the said obligation through the occurrence of an actual dispossession of his tenant. Such tenant, though possibly in peril of having his possession of the leased premises disturbed by the eventualities of said foreclosure suit, would have been premature in assuming that these would certainly occur and in asserting damages which had not yet arisen. It could not in fact do so for the simple reason that no estimate of the nature or extent of such damages could be made until an actual and total eviction had taken place. All that the plaintiff in this action was required to do in said foreclosure suit was, as a party thereto, to assert the existence of its lease and to protect the same against subsequent lienholders. As to the protection of itself against the assertion of a superior right on the part of the plaintiff in that action it was entitled to rely upon the protection which its covenant afforded and upon the obligation of its co-defendant Pentz to see to it that such protection was accorded. This being so, there was nothing in the nature of *res adjudi-*

*cata* in that action which could in anywise affect or foreclose the assertion of the plaintiff's rights and remedies in the present action arising out of its eviction occurring after said former action.

There is one other contention of the respondent which was urged upon his motion for a directed verdict and to which the trial court gave much weight in granting such motion. The respondent insists that since the undisputed facts showed the plaintiff herein to have been not the original lessee of the premises in question, but merely an assignee of the original lessee, it was not entitled to maintain this action or to assert any right therein arising out of a breach of a covenant of quiet possession by reason of the provisions of section 823 of the Civil Code. Said section read as follows: "Whatever remedies the lessee of any real property may have against his immediate lessor, for the breach of any agreement in the lease, he may have against the assigns of the lessor, and the assigns of the lessee may have against the lessor and his assigns, except upon covenants against encumbrances or relating to the title or possession of the premises." The respondent argues that since a covenant in a lease with respect to quiet possession on the part of a lessee is one which relates to the "title or possession of the premises" it comes within the exceptions embraced in said section and hence does not exist in favor of the assignee of a lessee. This assertion, however, involves a total misconception of the meaning and intent of said section of the Civil Code. The section by its terms relates to "remedies" as distinguished from "rights" and when so considered its meaning is clear. The remedy which a lessee of premises has against the lessor, or his assigns, for an accrued or already created breach of any agreement in the lease passes to the lessee's assigns, and may be asserted by the latter against the lessor or his assigns. The two exceptions expressed in the section are that accrued remedies for already ripened breaches of covenants against encumbrances or relating to the title or possession of the premises do not so pass but remain with the original lessee. But neither of these exceptions nor in fact the section as a whole has any reference to breaches of the lease which have not occurred, nor to remedies therefor which have not arisen prior to the assignment of the lease. The assignment of a lease when

legally accomplished transfers to the assignee thereof the right to the enforcement of every unbroken covenant which the lease contains, but does not transfer those ripened choses in action which come within the exceptions in the section of the code above referred to. The respondent's contention in the foregoing regard is therefore without merit.

■ The respondent makes the further contention that since, from the pleadings and evidence in the case, it appeared that while the plaintiff, up to the time of the institution of the foreclosure action, had paid the installments of rent which had theretofore fallen due, it did not pay the installment thereof which, according to the terms of said lease, became due shortly after the institution of said action; and that being thus in default in its own agreement to pay rent at the time of his eviction, it was not entitled to enforce in this action the defendant's obligation to insure him the peaceable possession of the leased premises during the term of said lease. The plaintiff made at the trial, and repeats here, several answers to this contention, but it seems to us that a sufficient answer thereto is to be found in the fact that, according to the terms of said lease, the failure of the lessee to pay rent does not *ipso facto* work a forfeiture of the leasehold, but only gives to the lessor the right "at his option to terminate and end said lease." This amounts to no more than the right on the part of the landlord to terminate the lease in the manner provided by law; that is to say, in accordance wtih the provisions of sections 1161 et seq. of the Code of Civil Procedure. It is so expressly provided in section 791 of the Civil Code. The agreement to pay rent and the covenant of peaceable possession are not thus interdependent covenants unless expressly made so by the terms of the lease. ■ Besides, the plaintiff's failure, if any, to keep its agreement as to payment of rent after suit commenced for the assertion of a superior title was not made the basis of its eviction at the termination of such suit, nor was it made one of the grounds upon which the motion for a directed verdict herein was predicated. The point is not, therefore, available to the respondent upon this appeal. The case stood, therefore, in this wise at the time when the defendant made and the trial court granted the motion for a directed verdict. The grounds of said motion, in so far as they were based upon the foregoing special

defenses of the defendant, were not well taken; and the order of said court in granting said motion, in so far as it did so upon such grounds, was erroneous. ■ This being so, upon the case as it stood at the time of the making and granting of the defendant's motion for a directed verdict in his favor the plaintiff was, at the very least, entitled to a verdict and judgment for nominal damages, and this being so, the trial court was clearly in error in directing the jury to find a verdict otherwise than in the plaintiff's favor, at least to that extent. It is, however, argued by the respondent that since, upon the state of the record, the utmost to which the plaintiff was entitled was a verdict for nominal damages, the appellate tribunal will not reverse a case upon appeal when the effect of such reversal could only amount to the eventual recovery by a plaintiff of nominal damages. There is authority to sustain this view. (2 Cal. Jur., pp. 1009, 1010, sec. 600, and cases cited.) ■ We are not, however, satisfied that in any view of the law governing the measure of damages recoverable in an action founded upon a breach of the covenant for peaceable possession, which is either expressed in, or which by virtue of section 1927 of the Civil Code becomes a part of every lease, the plaintiff in the state of the record in this case would or should have been limited in its recovery to merely nominal damages. There were two states of facts fairly established by the undisputed evidence in this case which would militate against such a conclusion. The first of these relates to the showing which the record contains in support of the plaintiff's averment in its second amended complaint to the effect that the plaintiff "resisted said eviction and removal from said property by all the legal means within its power." The record discloses that the plaintiff was made a party to the action instituted by the First Federal Trust Company for the foreclosure of its superior liens; that being served with process it appeared in said action by counsel and filed an answer therein; that thereafter its co-defendant, W. R. Pentz (the defendant herein) and The Bank of California National Association joined in the filing and service of an answer and cross-complaint in said action wherein they made the plaintiff herein a cross-defendant and in which these cross-complainants sought to have it determined that the said Bank of California National Association was the

owner and holder of a lien upon said premises which was superior to whatever right, title, and interest or estate the plaintiff herein had in said premises, and that said premises be sold in satisfaction of said superior lien, and that the plaintiff herein be foreclosed from all right or claim in or to said premises. The record discloses that the plaintiff herein having been served with process as a cross-defendant in said cross-action, also appeared and answered therein by counsel, and in its said answer set forth its said lease and alleged its superior right thereunder to the asserted claims of said cross-complainants; that a trial was had upon the issues thus framed, during which much evidence was presented and as a result of which the plaintiff succeeded in having it decreed that its rights and claims as the holder of said lease were superior to the asserted rights and claims of said cross-complainants. It thus sufficiently appears that the plaintiff herein was put to an outlay of expense for counsel fees and costs in defending its possession, not only against the superior right of the plaintiff in said foreclosure proceeding, but also against the asserted superior right and claims of the cross-complainants therein, the defendant Pentz herein being one of these. It is true that the plaintiff herein had not, at the time of the making of the motion for a directed verdict herein, proffered any very definite proofs as to the exact or proximate amount of its said outlays, but it had prayed for a lump sum in damages, and in the absence of any assault upon the sufficiency of its proofs in the foregoing regard we think the jury might properly have made an allowance for such damages under the plaintiff's general prayer. The respondent herein had steadfastly contended that the plaintiff's utmost limit of recovery in this action is defined by the provisions of section 3304 of the Civil Code. But even if we should so hold we find among the items of recoverable detriment under the terms of said section that of "3. Any expenses properly incurred by the covenantee in defending his possession," and if we should not so hold, but should conclude to relegate the plaintiff to other remedies in the way of damages than those provided for in section 3304 of the Civil Code, the plaintiff would be clearly entitled to recoup in damages for its outlays in defending its possession against the assertion of a superior title. (1 Tiffany on Landlord and Tenant,

p. 548.) It would seem to follow irresistibly that the trial court committed reversible error in its refusal to commit to the jury the right to find some measure of substantial damages as a recompense for the plaintiff's outlays in defending its possession, both against the assertion of the superior claims of the plaintiff in the foreclosure proceeding and the asserted superior claims of the cross-complainants therein, of which the defendant herein was himself a direct actor.

There is yet another aspect of this case from which, even in respondent's view of the law of the case, the plaintiff herein would have been entitled to an award of substantial damages upon the state of the record as it stood when the motion for a directed verdict was granted. The undisputed evidence in this case disclosed that the defendant Pentz was guilty of a degree of bad faith in his entire dealing and attitude toward the plaintiff, who came to be his lessee. The defendant Pentz was the brother-in-law of L. B. McMurtry, the original owner of the premises in question, and was at all times entirely familiar with the state of the title to said premises and of the extent to which said McMurtry had involved his title and ownership thereof prior to his execution of the grant deed to his brother-in-law, Pentz, which antedated the making of the plaintiff's lease. Pentz was also during all of said times the assistant cashier of the Bank of California corporation, and as such was fully familiar with the transactions of said McMurtry with the latter institution, if he did not actively negotiate the same. He was thus fully conversant with all of the perils in which the title to the premises was enmeshed at the time of the making and execution of the lease in question to the assignor of the plaintiff and also of the assignment thereof, with his express consent, to the plaintiff. He executed such lease and consented to such assignment in his assumed capacity as the owner of the leased premises and was, therefore, as we have held, subject to all of the obligations and liabilities incident to such ownership. When the foreclosure action was instituted and the plaintiff was made a party thereto and when the plaintiff's acquired lease and its peaceable possession thereunder were put in peril, the plaintiff herein directed the attention of its lessor, Pentz, to such peril and demanded that its lessor take steps to protect it in its peaceable possession of the premises covered

by its said lease; but the undisputed evidence shows not only that the defendant Pentz took no action looking toward the plaintiff's protection, but that, on the contrary, he actively joined with his employer and co-defendant, the Bank of California, in the assertion, by way of cross-action, to which he made the plaintiff herein a party, of a superior claim on the part of the said corporation to which he and it sought to subordinate the rights of the plaintiff herein, derived from the lease which he himself had made. The record further discloses that after the said foreclosure action had resulted in a decree and sale of said premises the said defendant, Pentz, notwithstanding his assurances to the plaintiff herein that its peaceable possession of the premises would not be disturbed, took no action of any kind to prevent or delay its eviction or to mitigate in any way the rigors and losses thereof. The plaintiff, in its second amended complaint herein, sets forth in detail the foregoing acts, neglects, refusals and hostilities on the part of the defendant Pentz, and thus sufficiently charges the said defendant with a want of good faith in respect to his obligations owed to his lessee. There was no denial or dispute as to the foregoing facts, and this being so, we are of the opinion that the plaintiff herein was entitled to have had submitted to the jury the issue as to the defendant's bad faith in connection with the latter's breach of his covenant of peaceable possession. In the case of *Mack* v. *Patchin*, 42 N. Y. 167, 173 [1 Am. Rep. 506], the defendant lessor was upon quite a similar state of facts held chargeable with a want of good faith in his duty and dealing with regard to his lessee and a judgment against him for the value of the unexpired term was upheld. The foregoing case is a leading case upon the right of a lessee to substantial damages in cases where the lessor was chargeable with a want of good faith in respect to the protection of his lessee in response to his obligation to insure the latter peaceable possession for the term of his lease. We are of the opinion that in the instant case the jury should have been permitted to pass upon the weight of the evidence as to the presence or absence of good faith on the part of the defendant in the premises, and that in the event of a finding by it of absence of good faith on the defendant's part it would have been entitled to render a verdict in the plaintiff's favor for sub-

stantial damages. This being so, it was reversible error on the part of the trial court to deny it that right by the compulsion of a directed verdict in the defendant's favor.

 The citation of the New York case, above referred to, brings us to consideration of the whole subject of the measure of damages recoverable in this state for the breach of covenants of peaceable possession in leases of real estate, since, if this case must be reversed and retried, the question in its entirety will necessarily arise. It is the contention of the respondent herein that the measure of damages recoverable in such cases is controlled by the provisions of section 3304 of the Civil Code, which reads as follows: "The detriment caused by the breach of a covenant of 'seisin,' of 'right to convey,' of 'warranty,' or of 'quiet enjoyment,' in a grant of an estate in real property, is deemed to be:

"1. The price paid to the grantor; or if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore at the time of the grant to the value of the whole property;

"2. Interest thereon for the time during which the grantee derived no benefit from the property, not exceeding five years;

"3. Any expenses properly incurred by the covenantee in defending his possession."

A reading of this section discloses that it does not directly or expressly designate leases and the right of recovery of lessees within its terms; but it is argued by the respondent that under the other provisions of our codes and under the authorities generally a lease of real estate is declared to constitute "a grant of an estate in real property" and, hence, is to be embraced within the provisions of the foregoing section of the Civil Code. While it is true that under the provisions of certain sections of the Civil Code, such as sections 1053, 1108, 1213, 1214, and 1215 thereof, the transfer of any interest in real estate is generally designated as a "grant" thereof, it does not follow therefrom that the term "grant" wherever found in our constitution or codes must be interpreted to embrace every transaction in which some interest in real estate is conveyed. That this term "grant" is one of general significance, applicable to all transfers in writing of either real or personal property, is

made clear by the provisions of section 1053 of the Civil Code, but whether or not a particular transaction referred to in our constitution or statutes is to be included within the general meaning of that term depends upon the nature of the transaction and upon the context in connection with which the term is used. This was made very clear by the decision of this court in the case of *San Pedro etc. R. R. Co.* v. *Hamilton,* 165 Cal. 610 [37 L. R. A. (N. S.) 686, 119 Pac. 1073], wherein the foregoing sections of the Civil Code are adverted to and the authorities·are collated and reviewed. In that case the question as to the interpretation to be given to the term "grant" as used with respect to tide lands, in article XV, section 3 of the state constitution, expressly forbidding the grant of such lands, was under review, the contention being that by the use of said term the leasing of such lands was forbidden. After an exhaustive examination of the decisions, not only of our own state, but of other jurisdictions, this court reached the conclusion that leases of such lands were not inhibited and were not to be held embraced within the term "grant" as used in that provision of the constitution. In so deciding this court referred with approval to the case of *Simonson* v. *Burr,* 121 Cal. 582 [54 Pac. 87], wherein it was held that the leasing of a homestead was not to be construed as an abandonment thereof under section 1243 of the Civil Code declaring that a homestead is abandoned "by a *grant* thereof." The court also cites the case of *Des Moines Co.* v. *Tubbessing,* 87 Iowa, 138 [54 N. W. 68], wherein the authorities collated in American and English Encyclopedia of Law are referred to as supporting the rule that according to the weight of authority the term "grant" in its ordinary significance does not embrace a chattel interest in realty. From the review of the authorities the court concludes "that the meaning of the word 'grant' has by judicial determination been narrowed or enlarged to meet the exigencies of particular cases and the spirit of the law in which the word is employed." In the case of *Jeffers* v. *Easton, Eldridge & Co.,* 113 Cal. 345 [45 Pac. 680], this court held that an estate for years was personal property; that under the provisions of section 1113 of the Civil Code the covenants which are implied in transfers of property are limited to conveyances by which "an estate of inheritance or fee simple is

to be passed'' and that by section 765 of the same code the common-law distinction between freehold estates and estates for years is preserved and that it is expressly declared therein that ''estates for years are chattels real'' and that an assignment of a term for years is, therefore, governed generally by the rules applicable to sales of personal property. In the light of the foregoing authorities we are of the opinion that in determining the question as to whether the clauses in section 3304 of the Civil Code defining the detriment caused by the breach of a covenant of quiet enjoyment in a ''grant of an estate in real property'' are to be so interpreted as to include leases of real property for a term of years is a question which depends, among other things, upon the context of this and the contiguous sections of said code wherein the same phrase is employed. Looking to the immediate wording of section 3304 of the Civil Code we find it stated therein that the ''detriment caused by breach of a covenant of 'quiet enjoyment' in a grant of an interest in real estate is deemed to be: '1. The price paid to the grantor,' '' etc. But in the case of the ordinary lease there is no price paid to the lessor. The consideration of the lease is the rentals therein provided to be paid at specified times during the term of the lease. In so far as such rentals cover that portion of the term during which the lessee has been suffered to remain in the peaceable possession of the premises, it has never been held that these are recoverable as such in an action brought after eviction, for the reason that as to these the lessee has received the full return therefor prior to his eviction. It is only such rentals as a lessee may have paid in advance covering a period subsequent to his eviction that he has been allowed a recovery. These are exceptional cases which cannot be held to justify a ruling that the recovery of rentals was intended to be referred to in the section as ''the price paid to the grantor.'' Indeed, when the entire language of subdivision 1 of this section is read it must be apparent that it can only have reference to the purchase price of premises paid upon a grant or sale, as distinguished from a lease thereof. This is made all the more apparent by a consideration of the two succeeding sections wherein the same phrase ''a grant of an estate in real property'' is used. Section 3305 obviously can only have reference to such ''grants'' as contain or imply cove-

nants against encumbrances and a breach thereof. But leases neither contain nor imply covenants against encumbrances and as to leases there can be no such thing as the breach of such covenants since the tenant is in nowise interested in what prior encumbrances the landlord may have placed upon his title to the leased premises so long as his peaceable possession is not disturbed thereby. Section 3306 of the Civil Code is equally, and even more obviously, inapplicable to leases and, the rights of prospective lessees, since the detriment therein provided for embraces such items as the cost of examining the title, which need not be an outlay of a mere lessee. We conclude that, judged by the context thereof and of its accompanying sections of the Civil Code, section 3304 thereof was never intended to have reference to leases of real estate or to the detriment caused by breaches of covenants for the peaceable possession of leased premises. We are further enforced in this conclusion by a reference to section 1927 of the Civil Code. This section contains the lessor's agreement to insure the lessee the quiet possession of the premises during the term of the hiring against all persons lawfully claiming the same. It is, in fact, the lessor's covenant which is read into every lease; and since this section insures to the lessee his peaceable possession "during the term of the hiring" it would seem logically to follow that the detriment caused by a breach of the obligation of this agreement would naturally be the damage suffered by the hirer through the loss of his term and, hence, the value of his term. But no such recovery would be possible to the lessee if his detriment is to be measured in the terms of section 3304 of the Civil Code and the substantial guarantees of section 1927 of the Civil Code would thus become meaningless.

It is important to note in this connection that the provisions of section 1927 of the Civil Code, while a portion of the unadopted Field Code of New York, were derived by the compiler of that code not from the laws of New York, but from the Civil Code of France. (See Annotated Civil Code, 1872, Commissioner's Notes; *Baranov* v. *Scudder,* 177 Cal. 458, 465 [170 Pac. 1122].) The rule of damages for the breach of covenants of peaceable possession in leases, not only in those states wherein the civil law originally prevailed (see *Dehan* v. *Youree,* 161 La. 806 [109 South. 498];

*Hodges* v. *Fries,* 34 Fla. 63 [15 South. 683]), but most of the other states of the country permit the award of damages for the value of the term. When we turn to the decisions of our own court upon the question of the amount of a lessee's recovery for the breach of covenants of this character we find that these have uniformly upheld the doctrine that a lessee is entitled to recover, among other damages for his eviction, the value of his term. In the early case of *Dwyer* v. *Carroll,* 86 Cal. 298, 305 [24 Pac. 1015], it was held, with special reference to section 1927 of the Civil Code, that a tenant whose peaceable possession was so far interfered with by his landlord as to amount to his eviction was entitled to recover in damages the value of his lease, citing *Dexter* v. *Manley,* 4 Cush. (Mass.) 14. In the case of *McDowell* v. *Hyman,* 117 Cal. 67 [48 Pac. 984], it was held that for a breach of the obligation imposed upon the landlord by virtue of the provisions of section 1927 of the Civil Code the tenant was entitled to the recovery of substantial damages covering the continuance of his term. The case of *Baranov* v. *Scudder, supra,* is instructive, for while that was an action by a sublessee to recover damages from his immediate lessor for his eviction by the original landlord of his said lessor, it was held that the plaintiff was entitled to the benefit of the provisions of section 1927 of the Civil Code and to be secured in his quiet possession of his leasehold during the entire term thereof. The plaintiff sued for the recovery of damages for the value of his lease during the term thereof and recovered such damages, and the judgment therefor was both by the district court of appeal and by this court affirmed. In the case of *Klein* v. *Lewis,* 41 Cal. App. 463, 467 [182 Pac. 789], it was decided that for a substantial eviction of a tenant by his landlord the former, under proper pleadings and proofs, would be entitled to recover the value of his unexpired lease, together with any other loss which was the proximate and natural result of his eviction. The most recent case in this state touching the recovery allowed under the terms of section 1927 of the Civil Code is that of *Pedro* v. *Potter,* 197 Cal. 751 [42 A. L. R. 1165, 242 Pac. 926], which was also an action by a sublessee for the recovery of damages for his eviction, but in which case it appeared that the sublease contained an express agreement that it was made subject to the con-

ditions of the original lease, and it was accordingly held that the termination of the original lease put an end to the term of the sublease and hence that there was no room for the application of the provisions of section 1927 of the Civil Code. There are certain other decisions in this state to which we have been referred, such as *McGarry* v. *Hastings,* 39 Cal. 360 [2 Am. Rep. 456] ; *McCormick* v. *Marcy,* 165 Cal. 386 [132 Pac. 449] ; *Lynn* v. *Knob Hill Co.,* 177 Cal. 56 [169 Pac. 1009], wherein the provisions of sections 3304 and 3306 of the Civil Code were referred to as furnishing the proper rules of damages; but each of these cases arose upon a breach of the covenant of quiet possession in conveyances or agreements to convey the title to land, and hence, for reasons which we shall presently see, these cases have no application to agreements for the quiet possession of lessees under the provisions of section 1927 of the Civil Code. The respondent herein makes the final contention that section 3304 of the Civil Code is controlling as to the damages recoverable for all detriment suffered through the breach of covenants of quiet enjoyment in "grants of an interest in real estate," and that the above-quoted clause embraces not only conveyances of title to real estate, but leases thereof as well. The basis of this contention is that the Civil Code of California as adopted in 1872 was in the main a replica of the so-called Field Code, prepared for but never adopted by the state of New York, but which was supposed to embody the existing law in New York at the time of its adoption in California, and hence, under the well-known rule of construction, this state, in adopting said code, and particularly section 3304 thereof, took said provision with the interpretation already given to it by the courts of New York. We are thus led to the very interesting inquiry as to just what was the state of the laws of New York touching the measure of damages for breaches of covenants of quiet enjoyment at the time of the adoption in 1872 of the California Civil Code. It may be stated incidentally that the original Field Code, as to most of its provisions, was framed not upon the basis of statutory law in that state, but upon the decisions of its courts prior to the formation of said code. The leading case touching the recovery of damages for the breach of a covenant for quiet enjoyment was the case of *Staats* v. *Executors of Ten Eyck,*

3 Caines (N. Y.), 111f [2 Am. Dec. 254]. That case involved the breach of a covenant of quiet enjoyment expressed in a grant of the title to real estate, and the rule as to the measure of damages therein laid down and later followed by other New York cases was substantially and in fact, almost literally that later set forth in the Field Code and adopted in the form of section 3304 of the California Civil Code. In the case of *Kinney* v. *Watts*, 14 Wend. (N. Y.) 38, it was sought to give application of the rule declared in the previous case, and certain other cases which had followed it, to leases, but since the court held that the rule could be given no application to the implied covenant sued upon in that case, the *dictum* *in* that case is of no value. In the case of *Mack* v. *Patchin*, 42 N. Y. 167 [1 Am. Rep. 506], however, decided in the year 1870, and which directly involved the breach of a covenant of quiet enjoyment in a lease, the New York court of appeals decided that upon the breach of such a covenant, where an eviction was occasioned through the fault of the lessor, the measure of damages was the value of the unexpired term, less the rent reserved. In the case of *Clarkson* v. *Skidmore*, 46 N. Y. 297, decided in 1871, it was held that a lessee for years of mortgaged premises holding under a lease containing a covenant of quiet enjoyment, upon foreclosure and sale under the mortgage, by which his eviction resulted, was entitled to receive the value of the use of the premises for the remainder of his term, less the rent reserved. These two cases, and others which might be cited, declared the law as it stood in the state of New York at the time of the adoption of the Civil Code of California, and necessarily, thereof, of section 3304 of said code, and it requires no argument to show that the rule expressed in these cases is not embraced in the rule of damages contained in section 3304 of said code. It fairly follows that the measure of damages embodied in that section and derived from cases which applied it to covenants in conveyances of title was not intended to be given application to leases of real estate. It may be said that the rule in the state of New York with respect to the measure of damages for the breach of the covenants of quiet enjoyment in leases has ever since been that declared in these early decisions of the court of last

resort in that state, and that this will appear from the recent decision in the case of *Dorb* v. *Modern Holding Co.,* 183 N. Y. Supp. 639, decided in 1920, wherein the rule is again stated that ''the measure of damages to a lessee who is ousted on foreclosure of mortgage on the premises is the value of the use of the premises for the remainder of the term, less the rents reserved.'' It may be said in conclusion that this is not only the rule in New York, but that it is the rule which has been given general adoption in most of the states of the country, and is so stated to be in the leading text-books upon the subject. (Tiffany on Landlord and Tenant, p. 538; Rawle on Covenants, 5th ed., sec. 169, p. 237.) In the latter authority it is pointed out that the earlier and harsher rule relating to the enforcement of covenants for quiet enjoyment has not only been found unsatisfactory to the courts of this country, but ''that it has been relaxed or modified to meet the injustice done by it to lessees in particular cases,'' and has been repudiated in England, from which, according to the Staats case, *supra,* it was originally derived, in the two recent and well-considered cases of *Williams* v. *Burrell,* 1 Com. B. 402, and *Lock* v. *Furze,* 19 Com. B. (N. S.) 96, and the rule adopted allowing a recovery to evicted lessees of the value of the term. Having thus determined that section 3304 of the Civil Code does not provide the measure of damages in cases of this character, we are brought to the final question as to where the statutory rule governing the measure of both general and special damages for the breach of agreements for the peaceable possession of real estate by the lessee thereof under the terms of section 1927 of the Civil Code is to be found. The answer is, in section 3300 of the Civil Code, which reads as follows: ''For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.'' We do not deem it necessary to discuss in detail the various questions suggested in the light of the plaintiff's pleadings and proofs upon the former trial, since these may vary upon a retrial of the cause. We deem it proper to decide, however, that the trial court was in error

in its order striking out practically all of the evidence offered on behalf of the plaintiff in support of its claims for special damages for losses of property and outlays incident to its eviction. In so ruling we do not wish to be understood as holding that all of such offered evidence was admissible, but simply that the order of the court striking out in its entirety such evidence was too broad. Upon a retrial of the cause, in the light of the applicability of section 3300 of the Civil Code to the instant case, the parties concerned and the trial court should have no difficulty in arriving at the proper rulings to the given upon the proffer of evidence in support or denial of the plaintiff's claims for damages. We have considered certain other points upon this appeal, but do not consider these sufficiently important to require separate discussion.

The judgment is reversed.

Shenk, J., Curtis, J., Seawell, J., Tyler, J., *pro tem.*, Langdon, J., and Waste, C. J., concurred.

Rehearing denied.