[Civ. No. 11991.   First Dist., Div. Two.   Jan. 28, 1942.]

VITRUVIAN CORPORATION (a Corporation), Appellant,
v. T. C. LAUBISCH et al., Respondents.

Henry O. Wackerbarth for Appellant.

Earl Oakley and Robert E. Ford for Respondents.

McWILLIAMS, J. pro tem.—This is an action to set aside a trust deed and the trustee's sale that occurred thereunder, and also to quiet the title to the property covered by the trust deed. Judgment was rendered in favor of defendants and plaintiff appealed.

The property involved had been acquired by appellant in 1933. At that time it was encumbered by the deed of trust referred to under which the Beverly Hills National Bank and Trust Co. was the trustee. On June 19, 1939, appellant conveyed the property subject to the deed of trust to one Neal V. Dow who, appellant claims, took the property as its trustee. The indebtedness, to secure which the deed of trust had been given, not having been paid when it fell due, the trustee gave notice of its intention to sell the property on January 18, 1940.

On January 17, the day before the sale was scheduled to occur, a Miss Wilhelminia E. Stowell, the assistant secretary of appellant, called upon J. Thomas Russell, one of the respondents, in regard to the impending sale. The purpose of her visit and the conversation that ensued is a matter of dispute between the parties. Appellant in its brief correctly states that the question as to what occurred at that interview presents substantially the only conflict in the evidence in the case. Appellant contends that at the interview between Russell and Miss Stowell she informed Russell of the pendency of the foreclosure proceeding and requested on behalf of appellant, of which her brother was president and manager, that he loan a sufficient sum to pay off the indebtedness, offering as security for such loan a deed to the encumbered property. Miss Stowell explained in her testimony that appellant was a closed corporation and that she had authority from her brother to refinance the loan. According to Miss Stowell, Russell inquired of her when the loan would be repaid. Her answer was that she might have the money in a few days or that she might not have it for thirty days or

possibly for a year. She further testified that Russell agreed to make the loan and stated that his fee for his services in so doing would be $100. Russell's version of the conversation between them was altogether different. He testified that Miss Stowell informed him that the property which she said was then occupied by her sister, a Mrs. Fitch and her husband, was to be sold on foreclosure sale the following day. She explained that Neal V. Dow who held title to the property was unable to prevent the sale. She expressed a desire, according to Russell's testimony, to buy the property for her sister, Mrs. Fitch. She told Russell that the property was worth between $15,000 and $20,000. She further stated, according to Russell, that she was expecting to receive $20,000 from an escrow in the near future and that if Russell would pay off the mortgage indebtedness and thereby prevent the sale she would procure a deed to the property from Dow, the record owner, and would thereafter buy the property from Russell at a price that exceeded the mortgage indebtedness by $1500. Russell testified that he accepted the proposition of Miss Stowell. Although Russell at that time had not seen the property he had the opinion of its value as given him by Miss Stowell. In addition he testified that he had inquired as to its value from a friend, W. T. Stockman by name, who had told him that the property was worth nine or ten thousand dollars. The lower court accepted Russell's version of what occurred at this interview and by its finding to that effect we are of course bound. That finding is largely determinative of the case.

Following the conversation between Russell and Miss Stowell, the former, who according to his testimony had had but little experience in such matters, called in one Hutson, a friend of his who was in the real estate business, to assist in closing the deal. The mortgage indebtedness which then amounted to $5058.64 was paid to the bank by Russell on January 18, the day on which the sale was scheduled to occur. He also, at the suggestion of Hutson, then requested and was given an assignment of the trust deed and of the note which it secured. A deed from Dow running to Julia Burke Moore, the nominee of Russell, as grantee, was delivered to him. An escrow was also opened with the bank under which Miss Stowell agreed to purchase the property from Julia Burke Moore within thirty days for the sum of $6615.64, being $1500 in excess of the amount of the mort-

gage indebtedness plus estimated escrow charges and other incidental expenses. Miss Stowell did not perform the conditions of the escrow and it lapsed.

On February 22, 1940, Miss Moore, the grantee, served a demand for possession of the property on its occupants, Miss Stowell and Mr. and Mrs. Fitch. Possession being refused an ejectment action was begun by Miss Moore. An answer was filed on behalf of appellant which alleged that the sum paid to the bank by Russell on January 18, had been paid as a loan and that the deed from Dow to Moore was in legal effect a mortgage to secure the repayment of the sum paid by him to the bank. The alleged connection of appellant with the property appears to grow out of an unrecorded deed to appellant that was executed by Dow on the same day that appellant had deeded the property to Dow. The lower court found that appellant did not inform any of the respondents of the execution or of the existence of this deed prior to the commencement of this action. That court also found it was not true that appellant was the owner of the property at the time this action was commenced.

Following the filing by appellant of its answer, Russell, whose experience on the subject involved in the litigation concededly was limited notwithstanding the fact that he was an attorney, called in W. J. Stockman, a more experienced attorney, to assist him with the litigation. Stockman advised a foreclosure by trustee's sale. The trustee originally named in the trust deed having expressed a desire to be relieved of its duties as trustee and having refused to proceed with a sale, an order of court was secured whereby Stockman was substituted as trustee. He thereupon gave notice that a sale under the trust deed would be held on September 3. On the day appointed and before the property was offered for sale, appellant caused a notice to be read aloud, notifying those present that the deed of trust under which the property was being sold "had been fully paid, satisfied and discharged" by the original payment made by Russell on January 18, and also notifying the persons present that appellant was the owner of the property covered by the deed of trust. The property was bought in by respondent T. C. Laubisch who bid $8000 therefor. The lower court found that at the time of this sale the obligation secured by the deed of trust had not been paid and was in default. The trustee's deed to Laubisch contained the usual recitals to the effect that the require-

ments of the trust deed relative to a sale on foreclosure had been complied with. The deed of trust itself contained the customary provisions making the recitals in any deed given by the trustee following a foreclosure sale conclusive proof of the truthfulness of its recitals with reference to matters or facts affecting the regularity or validity of the sale.

The lower court found on adequate evidence that appellant had been in possession of the property from January 17, 1940 but that it had made no offer or tender either to Laubisch, Russell, or Moore, to do equity prior to the commencement of this action.

Appellant's first contention is that two of the findings made by the lower court are not supported by the evidence. One of those findings is to the effect that Russell had paid the trustee the $5058.64 in consideration of the assignment by the trustee of the note and its beneficial interest under the deed of trust in and to the property covered thereby. The other finding objected to is to the effect that there had been no agreement that the said sum should be paid to the trustee in satisfaction, or payment, or discharge of the deed of trust. This contention of appellant with reference to those two findings is submitted by it without argument on a mere reference to the testimony taken on the trial. In the circumstances it is sufficient to say that in our opinion the findings are fully supported by the evidence.

Appellant's principal contention upon which, in its different aspects, appellant's case on appeal is largely based, is that the payment by Russell to the Beverly Hills National Bank and Trust Co., the original trustee, amounted to a loan and that the deed from Dow to Moore was in legal effect but a mortgage given to secure the loan. Appellant cites numerous cases which hold in substance that when the purpose and effect of a transaction is to create a lien on certain property as security for the payment of a loan the transaction will be held to constitute a mortgage regardless of the language used by the parties in the instruments executed by them. The principle of law referred to is of course a settled one. However, it has no application to the situation here presented in view of the testimony and the findings of the lower court. The contention is based upon the testimony given by Miss Stowell which was rejected by that court which made findings in accordance with the opposing testimony of Russell.

All of the subsidiary arguments which are made by appel-

lant and which are predicated upon an acceptance of the testimony of Miss Stowell must likewise fall for the same reason. Thus, the claim of appellant that the transaction between Miss Stowell and Russell amounting, as he says, to a loan of money at a usurious rate of interest which must therefore be held to be void, cannot be allowed. The same is true of the contention that the deed taken by Julia Burke Moore being in legal effect but a mortgage her only remedy was its foreclosure.

Appellant is not aided in its argument by its insistence that the testimony of Russell that he had purchased the property is inherently improbable and that it should therefore be disregarded by this court. That argument was a proper one for the consideration of the lower court. But having been rejected by that court it cannot avail in this court. We may add that not only was the testimony given by and on behalf of respondents with respect to the questioned transaction not inherently improbable but that in certain material respects it constitutes a much more reasonable explanation of that transaction than does the testimony offered on behalf of appellant.

Appellant argues that there was no consideration for the assignment of the trust deed and that therefore neither Russell nor Julia Burke Moore had the right to foreclose. Hence, says appellant, Laubisch has no title to the property involved. But testimony was given that since the title to the property had not been searched before the transaction was consummated an assignment of the trust deed was then taken as a measure of precaution. In view of this testimony appellant's contention must fall.

Appellant's last contention is that when on January 18, 1940, the deed from Dow and the assignment of the deed of trust were given to Julia Burke Moore, the two merged. The answer to this contention appears from a consideration of the circumstances of the case which indicate clearly that no such merger was intended. It is, of course, a long settled principle of law that the matter of merger in circumstances such as those here presented is a question of the intent of the parties. (18 Cal. Jur. 75.)

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 27, 1942.