[Civ. No. 14258. Second Dist., Div. Two. Dec. 29, 1943.]

CAMBRIDGE COMPANY (a Corporation), Appellant, v. JULIA BURKE MOORE et al., Respondents.

Henry O. Wackerbarth for Appellant.

Bautzer, Ryan, Ford & Silbert and Robert E. Ford for Respondents.

MOORE, P. J.—The question for decision is whether the findings and decision in a former action between plaintiff's assignor and defendants, for nullifying foreclosure proceedings for the sale of a lot and for the recovery of damages by reason of such sale and for quieting title of the lot in plaintiff, is res judicata of the present action by plaintiff to annul the deed by which one of the defendants acquired title to the lot and for the sum received by her at the sale of the lot in excess of the amount she paid for the note and trust deed.

Prior to the events hereinafter mentioned, Orland Fitch and his wife were owners of lot 31 block 92 of Beverly Hills

subject to their deed of trust in favor of Beverly Hills Investment Corporation as trustee for the benefit of Beverly Hills National Bank and Trust Company, hereinafter referred to as the bank. On September 19, 1933, they conveyed the lot to Vitruvian Corporation hereinafter referred to as Vitruvian. On June 19, 1939, Vitruvian deeded the lot to defendant Dow, which deed was recorded on the 30th of the same month. On the very same day his deed was recorded Dow executed a conveyance of the lot back to Vitruvian and it was never recorded. On September 1, 1939, the beneficiary of the deed of trust declared a default in the payment of the Fitch note secured thereby and demanded a sale of the lot in full. Pursuant to such declaration the trustee recorded the declaration and fixed the 8th of January as the day for the sale which was postponed from time to time until January 18, 1940. On the 17th of January Miss W. E. Stowell called upon defendant Russell, an utter stranger to her and to Vitruvian, and stated that she knew the owner of the lot, one Neal V. Dow, who was about to lose it by foreclosure of the trust deed; that she desired to acquire it for her sister, Mrs. Fitch; that she would procure an adequate conveyance to Russell if he would protect the lot from the pending foreclosure and resell it to her within 30 days at an advance of $1,500 over the amount due on the trust deed note, to wit: $5,058.64. Miss Stowell did not advise Russell of Vitruvian's connection with the matter or tell him that she was an officer of that corporation. But pursuant to his acceptance of her proposal he instructed her to fetch the executed deed from Dow in favor of defendant Moore to his office at 8 o'clock a. m. on the following day. In fulfillment of her appointment Miss Stowell delivered the deed (from Dow to Moore) at the time designated, whereupon Russell paid the bank the $5,058.64 on behalf of Moore in consideration of the bank's agreement (1) to assign the note and trust deed to Moore, (2) to rescind the declaration of default and demand for sale and (3) to cause the trustee to cancel the sale scheduled for that very day. After the bank performed according to its agreement, Russell and Miss Stowell opened an escrow at the Fairfax and Beverly office of the Citizens National Trust & Savings Bank under the terms of which Moore should sell the lot to Stowell within 30 days for the amount paid to the bank by Moore plus the sum of $1,500 or the total of $6,615.64 with interest at seven per cent from date of escrow plus

escrow charges, cost of title and fire insurance, and recording fees. No payment on her proposed purchase price was ever made by Stowell within the 30 days or at all.

After Stowell's failure to make the purchase Moore proceeded to take the necessary and legal steps to perfect her title and to sell the lot by assigning the note and trust deed to defendant Fennell; by having the Beverly Hills Investment Corporation resign as trustee and by having defendant Stockman substituted as trustee by order of court. Such order was recorded in the official records on May 4, 1940. In orderly succession the customary, necessary, and legal acts were performed whereby to effect a valid sale by the substitute trustee. This was accomplished on September 3, 1940, at which time the obligation of the trust deed was in default. One T. C. Laubisch purchased the lot at the trustee's sale for the sum of $8,000. Just prior to the sale a paper was read by an agent of Vitruvian advising the persons present that the trust deed of Fitch and wife had been satisfied and discharged on January 18, 1940, by the payment of $5,058.64 and that Vitruvian was the owner of the lot 31. By such an act Vitruvian acquiesced in the substitution of Stockman as trustee. Following the sale Stockman delivered his trustee's deed to Laubisch who recorded the instrument.

The deed of trust contained the usual provisions of such instruments which authorized all of the acts done by the bank and by Moore and her agents and trustees. It provided that the recitals in the trustee's deed are conclusive proof of their truth against all persons.

November 20, 1940, Vitruvian filed its complaint in the superior court against the identical defendants named herein to obtain the annulment of 'the deed of trust and for the sum of $14,719.04 as damages for their acts which divested Vitruvian of its title to the lot, to vacate the decree which appointed Stockman as substitute trustee, and to quiet its title to the lot described in the trust deed.

Although Vitruvian has been in possession of the lot since the trust deed was assigned to defendant Moore, it never made an offer to pay the $5,058.64; never paid taxes and delinquencies for three years prior to filing its action, which exceeded $800 at the time of the trial; never offered to any defendant to do equity in the premises.

In its action Vitruvian alleged that Stowell borrowed the

money from Russell to discharge the sum due the bank; that she offered to have the lot conveyed to Russell as security for the loan; and that Russell charged $100 for his services. But the court found against these claims and also determined that Stowell did not employ Russell in connection with any matter mentioned in the findings.

Upon finding the facts as hereinabove recited the court decided and adjudged that Moore paid $5,058.64 for an assignment of the deed of trust and note; that the proceeding to substitute Stockman as trustee under the trust deed was regular and effective; that at the time of the sale to Laubisch the trust deed was a valid lien; that none of the defendants owned the lot after September 3, 1940; that the title of Laubisch be quieted against defendants and that Vitruvian take nothing.

Such findings and decision are sufficiently comprehensive to cover every justiciable claim that Vitruvian might make to the real property which it conveyed to defendant Moore. But after the judgment had been finally affirmed (*Vitruvian Corp.* v. *Laubisch,* 49 Cal.App.2d 360 [121 P.2d 784]) Vitruvian conceived the theory that although the trust deed was valid and the sale to Laubisch conveyed a sufficient title to the lot, yet there was no consideration for the deed from Dow to Moore and it should therefore be set aside. Such event would reinstate Vitruvian as owner at the time of the foreclosure sale and entitle it to the surplus over and above the amount paid the bank by Russell. Acting upon this new theory on August 5, 1942, Vitruvian (1) conveyed to plaintiff all of its interest in lot 31; (2) assigned to Cambridge its cause of action to set aside the deed from Dow to Moore; (3) assigned its claim against defendant Stockman in the sum of $2,393.62, the balance of the money received by the trustee from the sale of lot 31 after deducting the amount paid to the bank by Russell for the trust deed and note. Five days later Cambridge filed the instant action to annul the Dow deed and to recover from Stockman $2,393.62.

 Clearly the judgment in the Vitruvian action is res judicata of the instant cause. (Secs. 1908, 1962, Code Civ. Proc.; 15 Cal.Jur., § 206, p. 162.) In the former action it was determined that Vitruvian was not the owner of lot 31. It conveyed the lot to Dow and had him convey it to Moore.

 Two benefits accrued to Vitruvian by the contract of

Russell and Stowell: (1) either Vitruvian or its grantor, Fitch, was protected against a deficiency at the scheduled trustee's sale on January 18, 1940, and (2) the corporation gained the privilege of repurchasing the lot by the payment of the sum agreed upon within the period stipulated. That agreement to sell the property to Stowell was a good and valid consideration. (Sec. 1605, Civ. Code.) The failure of Stowell or Vitruvian to get possession of the moneys necessary for the repurchase was not the measure of Russell's promise to reconvey the lot within 30 days. Vitruvian's agent applied to Russell with a proposal of which the latter had no prior knowledge. Prompt action was required. The essential basis of the offer was the arrangement for Vitruvian's assistant secretary to regain the ownership of the lot freed from the trust deed for which she was willing to promise payment of a handsome profit.

█ But had the right to regain the title to the lot not been mentioned, the promise of Russell to discharge the trust deed was a sufficient consideration for the deed as between the grantor and the grantee. (*Mix* v. *Yoakum,* 138 Cal.App. 290, 294 [31 P.2d 1071].) The fact that Moore took advantage of the processes of the trust deed foreclosure in order to clear up all possible defects in the title that might have resulted from the numerous conveyances during Vitruvian's ownership does not diminish the value of Russell's agreement to protect Fitch, Stowell, Dow and Vitruvian from the Fitch note and to reconvey the lot for a designated price. Such agreement constituted the basis of the escrow which was opened at the behest of Stowell and to which she pledged the faith and adherence of Vitruvian. But if such advantages had not accrued still the deed would have been valid. █ A consideration is not necessary to support a deed of real property if it has been executed voluntarily and with knowledge of its contents and with intent to convey title to the grantee. (Sec. 1040, Civ. Code; *Knudson* v. *Adams,* 137 Cal. App. 261, 269 [30 P.2d 608] ; *La Mar* v. *La Mar,* 135 Cal. App. 693, 698 [28 P.2d 63] ; *Huntoon* v. *Southern Trust and Commerce Bank,* 107 Cal.App. 121, 127 [290 P. 86].) Both Dow as nominal grantor and Stowell the negotiator acted on behalf of Vitruvian. Hence there was no superior interest except that of the beneficiary under the trust deed. There is no suspicion of fraud, menace or undue influence about

the agreement of Stowell and Russell for the execution of the Dow deed. It was voluntarily and eagerly delivered. There was not even a breach of the agreement to resell by Russell or by Moore. The failure of Stowell to repurchase the lot left it on the hands of the grantee at a time when prices on realty were still depressed.

We have examined the pleadings as well as the findings of the Vitruvian action. The entire record reassures us that the rights of plaintiff and all claims of its assignor arising from the transaction consummated by Russell and Stowell were adjudicated in the Vitruvian action. There it was determined that Vitruvian had no interest in lot 31; here Vitruvian's assignee seeks a cancellation of the deed by which it alienated the lot. The authorities cited by appellant (*Title etc. Co.* v. *Monson,* 11 Cal.2d 621 [81 P.2d 944]; *Agnifili* v. *Lagna,* 204 Cal. 262 [267 P. 705]; *Standard Live etc. Co.* v. *Pentz,* 204 Cal. 618 [269 P. 645, 62 A.L.R. 1239]; *Rang* v. *Lang,* 182 Cal. 765 [190 P. 181]) as disclosed by their facts fail to support its contention that the doctrine of res judicata does not apply.

Judgment affirmed.

Wood (W. J.), J., and McComb, J., concurred.