[L. A. No. 3451.  Department Two.—March 30, 1915.]

## CHARLES B. CATES and ELLEN M. BROWN, Appellants, v. J. A. McNEIL et al., Respondents.

LEASE—OPTION OF PURCHASE—CONDITIONS PRECEDENT—TIME FOR EXERCISE OF OPTION.—A lease for ten years at a specified rental payable in monthly installments in advance, granted to the lessees an option to purchase the demised premises on certain terms if exercised by them at certain specified early periods during the leasehold term, and further provided for the exercise by them of a final option right (being the fourth option clause in the lease) as follows: "And in case the party of the second part shall not exercise its right and option to purchase said land within two years from date hereof, then and in that event such right and option to purchase shall absolutely determine and be null and void except that the party of the second part, after having paid the rent on said property for the term of ten years shall *then* have the right and option to purchase said property for the price of $600 per acre." *Held*, that the exercise of the last option was not required to be made on the very date for the payment of the last installment of the monthly rental, but might be made at a subsequent time within the term of the lease.

ID.—MEANING OF WORD "THEN."—While the word "then" may be used as an adverb of time and in a chronological sense fix a time limit, so also it may be used in a sequential sense meaning "in that event"

or "in such case." It is used in the latter sense in such optional clause.

ID.—OPTION FOUNDED ON CONSIDERATION—PAYMENT OF RENT A CONSIDERATION.—Such optional right is not a mere offer without consideration of the privilege of purchasing the property within a specified time which might have been withdrawn by the lessor at any time before acceptance. Here there was a valuable consideration moving from the lessees to the lessor. The payment by the lessees of rent for the full term was the consideration for their irrevocable right to purchase the leased premises at the specified price if they should elect to do so.

ID.—NOTICE OF ACCEPTANCE OF OPTION—CREATION OF EXECUTORY CONTRACT OF PURCHASE AND SALE.—Upon the election by the lessees to exercise the right of purchase, according to the terms in which it was offered, all that was necessary on their part to do was to give notice in due time of their acceptance of the terms. When this was done what was before an option right became an executory contract for the sale and purchase of the property.

ID.—UNQUALIFIED ACCEPTANCE—UNAUTHORIZED DEMANDS IN REFERENCE TO PERFORMANCE OF CONTRACT.—An absolute and unqualified written acceptance of the option according to its terms, was not rendered nugatory merely because it contained, in a subsequent and disconnected paragraph, demands on the lessor, not required of him or provided for in the option contract, and which had reference solely to the manner in which the executory contract of sale should be carried out after it was created by the acceptance that was made, as for instance, that the lessor should furnish a certificate of title and deposit a deed of the premises in escrow with some bank.

ID.—PAYMENT OF PURCHASE PRICE NOT NECESSARY TO ACCEPTANCE OF OPTION.—In order to constitute an acceptance, payment of the purchase price of the land was not required to be made or tendered when the option right was exercised. Payment would be essential before the lessees would be entitled to a conveyance of the land, but that is a matter pertaining to the performance of the contract of purchase and sale which had been created by the acceptance.

ID.—RIGHTS AND OBLIGATIONS OF PARTIES AFTER ACCEPTANCE—PERFORMANCE OF DEPENDENT COVENANTS—SPECIFIC PERFORMANCE.—In the absence of anything in the contract itself the obligations of the parties, after acceptance, in the performance of the contract, is governed by the law applying generally to bilateral contracts for the purchase and sale of property under which the agreement or covenant of the vendor to convey and the vendee to pay the purchase price are considered mutual and dependent covenants and are to be performed contemporaneously by the respective parties. Each party must perform his part in carrying out the contract and do so within a reasonable time after the contract is created. As the option clause did not provide otherwise, the lessees were not bound to make payment of the purchase price until the lessor was prepared to make them a

deed conveying a good title to the premises. Of course, before the right of specific performance may be asserted, the party invoking it must have performed or offered to perform on his part.

ID.—OFFER OF PAYMENT—REPUDIATION BY LESSORS—ACTION TO OUST LESSEES—TENDER IN PLEADINGS BY LESSEES—OFFER TO PAY INTO COURT—RIGHT TO SPECIFIC PERFORMANCE.—A seasonable offer by the lessees to pay for the land on delivery of a deed by the lessors, notwithstanding it was accompanied by conditions which were not provided for in the option and which they had no right to exact, was a good offer of payment, if the conditions were not objected to by the lessors, they having ample opportunity to do so; and if thereafter, and while the lessees were not in default, the lessors repudiated the contract and brought an action to oust the lessees from the possession of the land, the latter by tendering the purchase price in their cross-complaint in the action and offering to pay it into court, became entitled to a specific performance of the contract.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank R. Willis, ˙ Judge.

The facts are stated in the opinion of the court.

Alton M. Cates, and Stewart & Stewart, for Appellants.

J. W. Ballard, and Frank James, for Respondents.

LORIGAN, J.—This action for unlawful detainer was brought by plaintiffs to recover possession of a tract of land in Los Angeles County under a claim that the defendants were unlawfully holding over after the expiration of their term of lease. Defendants denied such unlawful holding and by cross-complaint sought specific performance under a provision of their lease giving them an option to purchase the leased premises.

It appears that on May 26, 1902, C. B. Van Every, the predecessor in interest of the plaintiffs in the fee of the land herein involved, executed a written lease of said premises described therein as containing four acres more or less, to the predecessors of defendants for a term of ten years at the monthly rent of ten dollars per month payable in advance on the first day of each month of the term, and also by the terms of said lease and in consideration thereof granted to said lessees an option to purchase the said premises on certain terms if exercised by them at certain specified early periods during the leasehold term, and further provided for the

exercise by them of a final option right (being the fourth option clause in the lease) as follows:

"And in case the party of the second part shall not exercise its right and option to purchase said land within two years from date hereof, then and in that event such right and option to purchase shall absolutely determine and be null and void except that the party of the second part, after having paid the rent on said property for the term of ten years shall then have the right and option to purchase said property for the price of $600.00 per acre." The lease was forthwith duly recorded. On January 3, 1903, the original lessees assigned and transferred said lease and the right to purchase the said leased premises under and by virtue of the option agreements therein contained to the defendants and cross-complainants. The lessor, C. B. Van Every, died on October 27, 1908, and by due proceedings in the matter of his estate plaintiffs became the owners of the fee of said leased premises.

The court found these facts and in addition made a finding—No. 9—"that the time to exercise the right or privilege to purchase said premises granted to cross-complainants by the fourth option clause of said lease at the price of six hundred dollars per acre, by the terms of said lease and option expired on the 27th day of May, 1912, the 26th of May, 1912, being Sunday; that on the 25th day of May, 1912 . . . the said cross-complainants elected to purchase the said leased premises under and by virtue of the right and privilege so to do granted by said fourth option of said lease at the price of six hundred dollars per acre and thereupon on said day and place duly and personally notified said Charles B. Cates thereof by serving upon him personally at said time and place a written notice thereof and tender of said price, and also on the 27th day of May, 1912, . . . duly and personally notified said . . . Ellen M. Brown thereof by serving upon her at that time and place a written notice thereof and tender of the said price, and then and there demanded from said plaintiffs their deed of conveyance conveying said premises to cross-complainants." In connection with this finding the court set forth as part of it the said notice, tender, and demand just referred to in full, and we quote here only the material part which is as follows:

"This is to notify you and each of you that we, the undersigned owners of the said indenture of lease and in possession thereunder of said lands and premises therein described, hereby exercise their option to purchase and are ready and willing to purchase the land in said lease described at the said price of six hundred ($600.00) dollars per acre as in said lease stipulated.

"And we hereby demand, that at as early day as possible, you cause a certificate of title to said land described in said indenture of lease to be prepared, showing title in you free from all encumbrance, and that upon the completion of the same that you convey said land to us, free from all encumbrance, by a good and sufficient deed of conveyance, and deposit said certificate and deed in escrow with any bank, title company or individual you may select for that purpose with instructions to deliver the same to us upon payment of the amount of purchase price. Upon notice of such selection, for such escrow, we will at once deposit therewith the full amount of such purchase price, with the instructions to deliver the same to you upon the delivery to us of said certificate of title and said deed of conveyance."

Proceeding the court found that at the time of serving said written notice of election neither of the plaintiffs so served at that time made any objection to said notice or tender or to any matter, form, or provision therein, nor to the said notice or tender or as to the mode of performance on the part of cross-complainants, though each had ample opportunity to do so; that plaintiffs failed and refused to execute said conveyance to respondents and on January 20, 1912, while cross-complainants were still in possession of the premises plaintiffs demanded of them a surrender of the possession by them to plaintiffs, which being refused, plaintiffs thereupon commenced this action in unlawful detainer; that cross-complainants as lessees had during the term of the lease erected on the premises a plant for refining crude petroleum and made improvements and additions to their plant of the value of thirty thousand dollars; that at the time of the making and execution of the lease the fair market value of the leased land did not exceed four hundred dollars an acre; that cross-complainants in their cross-complaint had made tender to plaintiffs of said option price of six hundred dollars an acre and in open court at the

opening of the trial of this action had further tendered to plaintiffs said price and then and there offered the same to plaintiffs upon receiving their deed of conveyance of said land.

As conclusions of law the court found that the respondents were entitled to have their option agreement specifically performed by the execution of a deed to them by plaintiffs on payment to the latter of two thousand two hundred and sixty-two dollars with interest.

Judgment was entered accordingly, from which plaintiffs appeal, accompanying their appeal by a duly certified tran-. script of the evidence given on the trial.

The sole contention of appellants is that the evidence does not support finding No. 9 which we have quoted in which the court finds that on May 25-27, 1912, respondents had elected to purchase the leased property by virtue of the right and privilege so to do granted by the option, or that on those dates they had tendered the plaintiffs the purchase price provided to be paid in exercise of the option. In this behalf they assert that under the terms of the option the time to exercise it was on the date for the payment of the last rent—April 26, 1912—and that an election to do so subsequent to that date but within the term of the lease was too late, relying in this contention on the word "then" found in the last clause of the option right which declares that the "party of the second part after having paid the rent on said premises for the term of ten years shall *then* have the right and option to purchase said property at the price of $600 per acre." They insist that by the use of the word "then" a definite time was fixed for the exercise of the option; that the privilege of purchasing the premises arose at the time for payment of the last rent on April 26, 1912, and was "then" to be exercised by acceptance if they should elect to avail themselves of the right, and as it was not exercised then it expired. But what was meant by the use of the word "then" in the sentence is a matter of interpretation. It will be observed that there is nothing in the terms of the option provision expressly making time of the essence of the exercise of the option right. Nor do we think that it must be held that the word "then" was intended to fix with certainty the time for such exercise as of the date of payment of the last monthly rental. It will be

noted that the word ''then'' is used twice in the fourth
option provision here under consideration. First in re-
ferring to the two years' option and next as applying to
this particular option clause. While the word ''then'' may
be used as an adverb of time and in a chronological sense
fix a time limit, so also it may be used in a sequential sense
meaning ''in that event'' or ''in such case.'' The latter is
obviously the sense in which it was used in referring to the
two-year option and we think such was the sense in which it
was used respecting the final option. By the provision of the
lease that option right was not available to respondent lessees
until ''after having paid'' the rent for the full term of ten
years. Payment for this full term was a condition precedent
to the exercise of this right of option at all and it was the
fulfillment of this condition precedent to which the word
''then'' had relation and was used in the sense of ''in the
event of'' or ''in such case'' of payment of rent for the term
of ten years the lessees ''shall *then* have the right and option
to purchase said property.'' This construction is in our
opinion strengthened by a consideration of the lease. After
the payment of the last installment of rent the relation of
landlord and tenant was still to continue for a month. It is
hardly to be assumed that it was the intention of the parties
to the option right that it should be exercised while the rela-
tion of landlord and tenant existed. On the contrary, the
reasonable interpretation would be that while the right of
option was to arise for the benefit of the lessees only on pay-
ment of rent for the full term, the lessees were not required to
exercise that right until the expiration of the lease.

It is next insisted by appellants that the respondents did
not on May 25-27th elect to purchase the leased premises un-
der the right granted by the option. The claim is that the
notice of acceptance of the option right was not absolute and
unqualified but was accompanied by conditions not embraced
in the terms of the option offer and which rendered its ac-
ceptance conditional. Hence, it is claimed there was no good
or valid acceptance.

It is to be observed that the option right involved here is
not a mere offer without consideration of the privilege of pur-
chasing the property within a specific time which might have
been withdrawn at any time before acceptance by the lessor.
Here there was a valuable consideration moving from the les-

sees to the lessor; the payment by the lessees of rent for the full term was the consideration for their irrevocable right to purchase the leased premises at the specified price if they should elect to do so.    (*Hall* v. *Center*, 40 Cal. 63.)

Having purchased this right to have a conveyance of the property made to them after the payment of rent for a definite term if they should elect to exercise the right according to the terms in which it was offered, all that was necessary on their part to do was to give notice in due time of their acceptance of the terms.    When this was done what was before an option right became an executory contract for the sale and purchase of the property.    There can be no question but that the respondents served upon the appellants a notice of their acceptance of the option offer and in the exact terms set forth in the option clause.    This is apparent from the opening sentence of that notice as quoted in the finding.    But it is insisted by appellants that while respondents gave notice of their exercise of the option right and their readiness and willingness to purchase the land at the price stipulated in the lease this attempted acceptance was accompanied by conditions—that a certificate of title and a deed to the premises should be deposited in escrow with some bank—that these conditions were not required or provided for in the option contract to be done by the lessor or the appellants as successors in interest, and that a demand for their performance accompanying the notice of acceptance as part thereof rendered the acceptance ineffectual.    It is true that the option contract does not call for the production of any certificate of title or deed to be deposited in escrow and the demand of the respondents in this respect was unwarranted. But these matters had reference solely to the performance of the contract, the manner in which it should be carried out after it was created by the acceptance which was made.    The opening paragraph of the notice to appellants was an absolute and unqualified acceptance of the right of option according to its terms.    The subsequent paragraph referring to furnishing a certificate of title and the matter of the escrow contains no language imposing the doing of these things as a condition to the acceptance.    It is a paragraph wholly disconnected with the previous paragraph declaring an acceptance in clear and unqualified language and does not in terms or by necessary intendment impose any conditions as to the

acceptance of the option. It does not say that the option is accepted "on condition" or "provided" these things shall be done. It has reference to something that is to be done and necessarily would have to be done after the acceptance in the previous paragraph is declared made; things that are to be done "at as early a date as possible" after the acceptance. The acceptance by respondents unconditionally made in the first paragraph of the notice having converted the option right into an executory contract of sale and purchase of the leased premises, the second paragraph was not intended to have any relation to such acceptance nor to render such acceptance in any particular conditional or qualified. It related merely to the suggestion of a convenient mode or manner of closing up the transaction—the performance of the executory contract of sale created by the acceptance. Of course, as we have said, the contract did not provide for the doing of these things even as a mode of performance and the court in its decree for specific performance did not so require. What we are holding, however, is that these matters complained of as embraced in the notice were not intended to have anything to do with the acceptance of the option right which was unqualifiedly accepted by the respondents according to its terms "as in said lease specified" but related solely to the matter of carrying out the contract by such acceptance. Similar conditions accompanying acceptance have been similarly construed. (*Turner* v. *McCormick,* 56 W. Va. 161; [107 Am. St. Rep. 904, 67 L. R. A. 853, 49 S. E. 28]; *Kreutzer* v. *Lynch,* 122 Wis. 474; [100 N. W. 887]; *Long* v. *Needham,* 37 Mont. 408; [96 Pac. 731]; *Rankin* v. *Rankin,* 216 Ill. 132, [74 N. E. 763].)

It is further contended by appellants that under the terms of the option clause in the lease payment of the purchase price at the time when the option right might be exercised was essential to constitute acceptance; that there was no tender of the purchase price made to the appellants when the respondents served their notice of the exercise of their right to purchase, and hence there was no valid acceptance. In support of this contention they insist that the payment of the money which respondents offered to make was a payment to be made after appellants had complied with the unwarranted conditions as to a certificate of title and the preparation and deposit of a deed in escrow; that this was an offer to pay money

not only on such unwarranted conditions but in the future, while in order to constitute a valid exercise of the right of option to purchase the property and create a binding contract it was essential that payment of the purchase price be tendered at the time when the right was exercised, and that payment of such purchase price was the only thing required by the option in order to constitute acceptance. We do not deem it necessary here to discuss the terms of the notice served on appellants as to whether it constituted a tender of the purchase price at that time or not. The option clause gave the respondents a right to purchase the leased premises for the price of six hundred dollars an acre. There is nothing in the option clause which requires payment of the price of the land to be made or tendered when the option right is exercised in order to constitute an acceptance. Payment may or may not be made an essential condition to the exercise of such a right just as the parties see fit to provide for in the option agreement. But nothing is said about payment in the option clause here. It is not even mentioned. What the respondents acquired under the option clause was an irrevocable right of option to purchase the property at a specified price if they should at the end of ten years elect to do so and all that was necessary on their part to do as far as the terms of the option are concerned in order to constitute a binding contract for the sale and purchase of the premises was to give notice of their acceptance of the right. This they did. Payment of the purchase price at that time was not a condition required by the option and it is not for the court to incorporate terms in it which the parties to it did not incorporate or even mention. Of course, payment would be essential before respondents would be entitled to a conveyance of the land but that is a matter pertaining to the performance of the contract of purchase and sale which had been created by the acceptance. In the absence of anything in the contract itself the obligation of the parties in the performance of the contract is governed by the law applying generally to bilateral contracts for the purchase and sale of property under which the agreement or covenant of the vendor to convey and the vendee to pay the purchase price are considered mutual and dependent covenants and are to be performed contemporaneously by the respective parties. Each party must perform his part in carrying out the contract and do so within a reasonable time

after the contract is created. The payment of the purchase price and the delivery of the deed are to be done concurrently and as the option clause here did not provide otherwise respondents were not bound to make payment of the purchase price until appellants were prepared to make them a deed conveying to them a good title to the premises. Of course, before the right to specific performance may be asserted, the party invoking it must have performed or offered to perform on his part. But as to payment for the land, the respondents offered to make it before the suit and on delivery of a deed to them by appellants. It is true that this offer was accompanied by conditions—the production of a certificate of title and deposit of the deed in escrow—which were not provided for in the option and which respondents had no right to exact. But as found by the court, no objection was made to these conditions accompanying the offer of payment, although appellants had ample opportunity to do so, and, hence, under the rule laid down in *Kofoed* v. *Gordon*, 122 Cal. 314, [54 Pac. 1115], they were waived and the offer of payment as made was good. Appellants declined to do anything on their part toward performance of the contract but shortly after the notice of acceptance and the offer of payment accompanying it, and though respondents were not in default, repudiated their right to have the purchase consummated by bringing an action to oust them from the possession of the property. In their cross-complaint in this action respondents tendered the purchase price of the property to the appellants and offered to pay it into court for them. Under these circumstances they did all they were required to do and were entitled to the decree of specific performance rendered in their favor.

The judgment appealed from is affirmed.

Melvin, J., and Henshaw, J., concurred.