[Civ. No. 8222. Third Dist. Apr. 1, 1954.]

STOCKTON THEATRES, INC., Plaintiff and Appellant, v. EMIL PALERMO, Defendant and Appellant.

Freed, Gebauer & Freed for Plaintiff and Appellant.

Smith & Zeller for Defendant and Appellant.

SCHOTTKY, J.—This is an appeal by plaintiff and a cross-appeal by defendant from a judgment awarding attorney's fees to plaintiff.

On September 13, 1940, defendant's father and plaintiff entered into a written lease for the Star Theatre, to begin on January 1, 1941. Said lease contained the following provision relating to attorney's fees:

"If either party shall commence any legal proceedings against the other for relief because of any default by the other because of failure to perform any term, covenant or condition of this lease and shall prevail in said action, the

party who has commenced and prevailed in said legal proceeding shall recover, in addition to all court costs a reasonable attorney's fee to be fixed by the Court.''

On October 27, 1941, defendant's father died and defendant became the owner of the leased realty.

On June 5, 1944, defendant commenced an action against plaintiff for declaratory relief, asking the court to declare the lease void under the Alien Land Law, and for restoration of the realty to him. Subsequently the court entered judgment for the defendant declaring the lease to be illegal and void. On July 11, 1945, defendant commenced an action against plaintiff in unlawful detainer to oust plaintiff from possession of the premises pursuant to the declaratory relief judgment. Judgment was entered in favor of defendant and defendant secured possession of the premises by writ of restitution. Appeals were taken from both of these judgments, and were consolidated on appeal. Both trial court judgments were reversed by this court and upon a petition for a hearing before the Supreme Court, same was granted and both trial court judgments were also reversed by the Supreme Court. On September 11, 1948, plaintiff commenced this action to recover attorney's fees expended in defending and taking the appeal in the declaratory relief and unlawful detainer actions. The action was based on the above quoted portion of the lease providing for attorney's fees.

The law firm of Rutherford, Jacobs, Cavalero and Dietrich represented plaintiff in the action for declaratory relief brought by defendant, and Messrs. Jacobs and Dietrich actually prepared and conducted the trial. Mr. Jacobs testified at the trial of the instant case as to the amount of work involved in preparing and conducting the case, and also that his firm was paid $7,500 legal fee. The law firm of Freed & Freed and its successor, Freed, Gebauer & Freed, prepared and conducted the unlawful detainer trial brought by defendant against plaintiff, and also prepared and conducted the appeals from the declaratory relief judgment and forcible detainer judgment on behalf of plaintiff. Mr. Eli Freed at the trial of the instant case testified to the work involved in connection with the unlawful detainer trial and the two appeals. He also testified that his firm was paid a fee of $12,500 for its representation in the unlawful detainer trial and the two appeals. There was no dispute as to the value of the services rendered by the two firms.

The trial court found that the appeal taken by plaintiff in the unlawful detainer action "constituted legal proceedings commenced by Stockton Theatres, Inc., for relief because of the default by Emil Palermo in ousting Stockton Theatres from the leased premises, for which Stockton Theatres, Inc., is entitled to recover reasonable attorneys' fees pursuant to the provisions of paragraph 16 of said lease," but that none of the other legal proceedings engaged in by plaintiff in said declaratory relief and unlawful detainer actions "were commenced for relief because of any default by Emil Palermo because of any failure as lessor to perform any term, covenant or condition of said lease." The court then went on to find that the value of the legal services rendered on behalf of plaintiff in the appeal in the unlawful detainer action was $2,500, and judgment was entered in favor of plaintiff in that amount. Both plaintiff and defendant have appealed from said judgment, plaintiff contending that it was entitled to a minimum amount of $10,000, and defendant contending that plaintiff was not entitled to recover any amount for attorney's fees.

■ Plaintiff contends, correctly, that a lease creates two sets of rights and obligations, arising from "privity of estate" and "privity of contract" (*Samuels* v. *Ottinger*, 169 Cal. 209 [146 P. 638, Ann.Cas. 1916E 830]; *Ellingson* v. *Walsh, O'Connor & Barneson*, 15 Cal.2d 673 [104 P.2d 507]), and that, therefore, a lease is to be construed according to the general rules of interpretation applicable to all contracts. (6 Cal.Jur., Contracts, § 161; 15 Cal.Jur., Landlord and Tenant, § 31; *Knox* v. *Wolfe*, 73 Cal.App.2d 494 [167 P.2d 3].) ■ Plaintiff correctly states further that in the absence of extrinsic evidence in aid of construction of a written instrument, an appellate court is not bound by the trial court's interpretation and will independently ascertain the meaning of the instrument from the language thereof as a matter of law (*Moore* v. *Wood*, 26 Cal.2d 621 [160 P.2d 772]; *Transport Oil Co.* v. *Exeter Oil Co.*, 84 Cal.App.2d 616 [191 P.2d 129]; *Cash* v. *Blackett*, 87 Cal.App.2d 233 [196 P.2d 585]; *Fischer* v. *Means*, 88 Cal.App.2d 137 [198 P.2d 389]), and that, therefore, notwithstanding the construction placed on the lease provision calling for attorney's fees by the trial court, this court may, by use of the standard accepted rules of contract interpretation, independently determine whether or not the provision was to extend to fees as contended by appellant.

Section 1644 of the Civil Code provides:

"The words of a contract are to be understood in their ordi-

nary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.''

Section 1861 of the Code of Civil Procedure provides in part that ''The terms of a writing are presumed to have been used in their primary and general acceptation. . . .'' See also 6 California Jurisprudence, Contracts, section 175.

 The general rule is that attorney's fees are not recoverable by a successful party to an action either in law or equity, except in the instances where they are expressly provided for by contract. (7 Cal.Jur., Costs, § 27.)

 In the instant case the parties did contract for the payment of fees under certain conditions. The language expressing these conditions must be construed in its ordinary and popular sense. According to the language of the provision, hereinbefore quoted, two things must exist before one party can recover attorney's fees from the other, and these two things are: He must (1) commence a legal proceeding against the other for relief because of any default by the other because of failure to perform a term, covenant or condition of the lease, and (2) prevail in said action. Then the provision repeats that the party who has ''commenced and prevailed in said legal proceedings'' shall recover a reasonable attorney's fee to be fixed by the court. Recovery of attorney's fees by the plaintiff in the instant case under this provision is sought for fees incurred in connection with the action for declaratory relief and the appeal therefrom, and the action for unlawful detainer and the appeal therefrom.

Applying the foregoing test to the declaratory relief action, it is clear that it was not commenced by the plaintiff. Thus the first condition is not met. The declaratory suit proceeding did not involve any question of relief for default because of failure to perform a term, covenant or condition of the lease. Thus the second condition for recovery of attorney's fees is not met.

Plaintiff did take an appeal in the declaratory relief action and did prevail, but this would not permit plaintiff to recover its attorney's fees because neither the declaratory relief action nor the appeal therefrom involved any question of relief for default because of a failure to perform any covenant of the lease.

The learned trial judge filed an able and exhaustive memorandum opinion which we believe correctly determines the

issues, and because such opinions are always helpful to an appellate court, we quote therefrom as follows:

"At the outset it should be apparent that this attorney's fee clause by its terms does not provide that attorney's fees may be recovered by a successful litigant in all kinds of legal action between the landlord and tenant. The plaintiff herein can recover attorney's fees only for the nature and kind of litigation which falls within the scope of the agreement. This view of the matter is supported by the following authorities: [Citing *Prichard* v. *Kimball*, 190 Cal. 757, 766, 767 [214 P. 863] ; *Farmers & Merchants' Nat. Bank* v. *Bailie*, 138 Cal.App. 143, 150 [32 P.2d 157].]

"Among the matters in litigation for which Stockton Theatres claims the recovery of attorney's fees is the action for declaratory relief. That action was brought by Mr. Palermo as plaintiff against Stockton Theatres as defendant. The complaint was filed on June 5, 1944, and marks the inception of the litigation between these parties.

"Mr. Palermo's complaint for declaratory relief alleged that the lease was illegal and void by reason of the Alien Land Law. There has been received in evidence as Plaintiff's Exhibit 2 the official file in this suit for declaratory relief. The answer filed by Stockton Theatres in that action does not allege any 'default' nor 'any failure to perform' the lease. The sole issue upon which the declaratory relief suit was commenced and was defended and was finally adjudicated was the issue concerning the validity of the lease.

"This was not an action in which Stockton Theatres was seeking relief for any 'default' because of failure to perform any term, condition or covenant of the lease.

"

" . . . To constitute a breach of the covenant of quiet possession or a constructive eviction there must be active interference with the tenant's possession of the premises and a suit brought by the landlord against the tenant does not constitute such a breach nor can it be called a constructive eviction. This is demonstrated by the following authorities.

"*Agar* v. *Winslow*, 123 Cal. 587 [52 P. 422, 69 Am.St.Rep. 84]. In this case the landlord had previously commenced an action for ejectment against the tenant. On page 593 of the opinion the court stated:

" 'In the other cases cited by appellant the interference relied on as constituting an eviction was in every instance of such a character as to interfere with the lessee's enjoyment of

the premises by depriving him of his right to collect rent or in some way rendering it inequitable for the landlord to collect rents from his lessee, and in none of them is the lessee freed from his obligation to his landlord where he remains in possession and enjoyment of the premises, either personally or through his subtenants, with the power to collect rent from them. It will be unnecessary to consider respondents' point that the appeal should be dismissed.'

"*Black* v. *Knight*, 176 Cal. 722, at page 726 [169 P. 382, L.R.A. 1918C 319]:

" 'In the case at bar, if the tenant had been actually ousted from possession by the landlord under process issued upon the unlawful detainer judgment, it might well be argued that *Levitsky* v. *Canning, supra* [33 Cal. 299], required a conclusion, contrary to very respectable authority, that there had been a wrongful deprival of possession by the landlord, constituting a breach of the covenant for quiet enjoyment. But as we have seen, that element must be held to be lacking here.

█ " 'So long certainly as there is no disturbance of the tenant's beneficial enjoyment of the premises caused thereby, the right of a landlord, acting in perfect good faith and without malice, to prosecute an action in the courts for the purpose of obtaining a determination of the question whether the tenant has not forfeited his term because of violation of some covenant of the lease, without making himself amenable to the tenant in damages, cannot well be disputed. Indeed, there is much authority which goes further in favor of the landlord's rights in this respect. It is substantially said in 2 Tiffany on Landlord and Tenant, section 289, that the general rule is that in order to make one liable for the institution of a civil suit, it must have been with malice and without probable cause, and that, under this rule, a landlord would not be liable to his tenant for damage to the latter arising from his wrongful institution of a summary proceeding to recover possession, unless it was instituted maliciously and without probable cause.'

"*Standard Livestock Co.* v. *Pentz*, 204 Cal. 618, at page 625 [269 P. 645, 62 A.L.R. 1239]:

" 'It is the respondent's contention that the breach of any of the lessor's obligations, under the provisions of section 1927 of the Civil Code, to insure to the lessee quiet possession of the leased premises during the term thereof against all persons lawfully claiming the same, occurred upon the institution of the foreclosure proceeding wherein the plaintiff in that action

asserted a superior right to that of both the lessor and lessee of the premises in question; and that such asserted breach occurred upon the filing of the complaint in the foreclosure action on November 6, 1918, and since the plaintiff herein did not institute the present action until February, 1923, its action was barred by the aforesaid provisions of the Code of Civil Procedure and particularly by section 338, subdivision 1 of said code. There is no merit in this contention, nor do the authorities cited in the respondent's brief sustain it. The law is too well settled to require extensive comment or citation of authority that the covenant of quiet possession in a lease is not breached until there has been an actual or constructive eviction. ██ The rule upon this subject is stated with sufficient citation of authority in the case of *McCormick* v. *Marcy*, 165 Cal. 386, 389 [132 P. 449, 450], wherein it is said: ''There is no breach of the covenant for quiet and peaceable possession of land until there has been an eviction by the true owner or an assertion by him of his paramount right in such a manner that the holder through the covenantor is compelled to yield possession or buy the outstanding superior title.'

''The views expressed in these cases have direct application to the facts of the case at bar. During the pendency of Mr. Palermo's action for declaratory relief in the Superior Court and for some months thereafter, Stockton Theatres remained in possession of the leased premises. Upon July 10, 1945, a judgment was entered in that action declaring the lease void, but it should be noted that the judgment did not by its terms oust the Stockton Theatres from the premises nor did any writ issued under that judgment deprive Stockton Theatres of the possession of the premises. Stockton Theatres filed a notice of appeal from that judgment on July 18, 1945, and at that time was still in possession of the leased premises.

''It is also relevant to mention the practical construction given to an agreement as revealed by the acts and conduct of the parties to the agreement. The attorney's fee clause as above quoted provides that 'either party may recover reasonable attorney's fees.' If the litigation had involved a 'default' of the lease then either party could have sought attorney's fees as part of the relief in that declaratory judgment action. See *Huber* v. *Shedoudy*, 180 Cal. 311, at page 314 [181 P. 63], and Code of Civil Procedure section 1060 wherein it is stated: 'He may ask for a declaration of rights or duties either alone or *with other relief*.' However, in this action for declaratory relief neither Mr. Palermo as plaintiff, nor Stockton Theatres,

as defendant, sought to recover attorney's fees as part of the relief prayed for. Both parties were represented by able counsel diligent in securing the rights of their clients.

"Stockton Theatres further claims recovery for attorney's fees expended in the defense of the unlawful detainer action. This action was brought by Palermo as plaintiff against Stockton Theatres as defendant for recovery of the possession of the leased premises. This suit was filed on July 11, 1945, the day after the Superior Court rendered judgment in Palermo's favor in the suit for declaratory relief. As appears from the complaint in the unlawful detainer suit, Palermo did not allege a breach or default in the lease but alleged that the lease was invalid for the reason previously stated and that the defendant Stockton Theatres was not entitled to the possession of the premises. On July 26th, 1945, Stockton Theatres, Inc., by their counsel, appeared as defendant and filed a demurrer to the complaint. The complaint was amended and then Stockton Theatres filed an answer to the amended complaint. Thereafter the case proceeded to trial and on December 1st, 1945, the Superior Court rendered judgment for the plaintiff Palermo and on the same day pursuant to a writ of restitution issued pursuant to that judgment, Mr. Palermo entered possession of the leased premises.

"On December 4, 1945, Stockton Theatres as defendant and appellant filed notice of appeal from the judgment in the unlawful detainer action. Thereafter the appeal proceeded in due course through the District Court of Appeal and finally to the Supreme Court of the State of California. On June 15, 1948, the Supreme Court rendered an opinion and reversed the judgment for plaintiff Palmero in the unlawful detainer action.

"Previously Stockton Theatres, as defendant and appellant, had on July 18th, 1945, filed a notice of appeal from the judgment of the Superior Court in the action for declaratory relief. On June 15, 1948, the Supreme Court rendered an opinion reversing the judgment for plaintiff Palermo in the declaratory judgment action. Hence, Stockton Theatres, as defendant and appellant, had prevailed in both appeals in both actions.

"We have in an earlier portion of this memorandum reached the conclusion that Stockton Theatres cannot recover fees for attorney's services performed in the declaratory judgment action because in the defense of that action and in

the appeal therefrom from the judgment rendered therein Stockton Theatres had not commenced any legal proceedings for relief from any default or failure to perform the lease.

"The problem now arises: Can this same reasoning be applied to the claim for attorney's fees in the defense of the unlawful detainer action? If Stockton Theatres is to recover attorney's fees for the ultimately successful defense of the unlawful detainer action then their claim must rest within the scope of the clause in the lease which defines their right to attorney's fees.

"We agree with plaintiff's contention that this clause in the lease as quoted above may give the right to recover attorney's fees not only to successful plaintiffs but also to successful defendants, but with this proviso: It must be established that the party who claims such fees has commenced a legal proceeding against the other for relief because of a default in the lease and the fee claimed must be for legal services performed in that proceeding.

"The word 'commence' as used in this clause can just as well mean 'commence a successful defense.' It would be a narrow interpretation to declare that the word 'commence' must be given the restricted construction of 'file a complaint as plaintiff.' Nevertheless, the words 'commence any legal proceedings' must be construed with the other words in the same clause.

"Therefore, in saying that attorney's fees under this clause in the lease may be recovered for a successful defense, it must be a proceeding in which the defendant seeks relief for a default by the other because of the failure to perform any term, condition or covenant of the lease. It should seem clear from the authorities already cited that commencing and maintaining an unlawful detainer action against the Stockton Theatres did not constitute a default by Mr. Palermo. (*Agar* v. *Winslow*, 123 Cal. 587 [56 P. 422, 69 Am.St.Rep. 84], *Black* v. *Knight*, 176 Cal. 722 [169 P. 382, L.R.A. 1918C 319], *Standard Livestock Co.* v. *Pentz*, 204 Cal. 618 [269 P. 645, 62 A.L.R. 1239].)"

The trial judge then points out that the first default occurred when Palermo entered the premises on December 1, 1945, by virtue of the writ of restriction issued on that date. This was an unjustified taking of possession because the judgment in the unlawful detainer suit was thereafter reversed. When Stockton Theatres on December 4, 1945, filed a notice of appeal from the judgment in the unlawful de-

tainer action they by that act commenced a legal proceeding for relief because of their landlord's unjustified taking of possession of the leased premises on December 1, 1945.

The opinion of the trial judge continues:

". . . Mr. Palermo's possession of the premises was founded upon the judgment in his favor in the unlawful detainer action and by seeking in their appeal to reverse that judgment, Stockton Theatres had commenced a proceeding as defined by the attorney's fee clause in the lease. It is true that the notice of appeal did not and in fact certainly could not allege in so many words a default by Mr. Palermo, but nevertheless in construing the effect of this attorney's fees clause we must give due regard to the particular facts of the litigation and the practical purpose of the proceeding and determine by what legal act the defendant commenced to seek the relief upon which he bases this claim for attorney's fees.

"Let us suppose that Palermo, after he obtained his judgment as plaintiff in the unlawful detainer action, had remained absent from the leased premises and at no time during the further course of the litigation took possession of the theatre premises and that at all times Stockton Theatres continued in possession of the property and that Stockton Theatres finally prevailed and obtained a reversal of the judgment.

"Under such circumstances Stockton Theatres as the prevailing party would be entitled to recover their statutory court costs as provided by Code of Civil Procedure, section 1034 and nothing more.

"Under such circumstances, Stockton Theatres, even though they had conducted a successful defense, would not be entitled to attorney's fees in that action nor in any subsequent action brought for that purpose. There is no rule of law or statute in this State giving a party that remedy in such a case wherein there is no finding of malice, oppression or bad faith on the part of the unsuccessful litigant. Furthermore, Stockton Theatres would not be given the right to recover attorney's fees in such a case by the attorney's fee clause in the lease because under such circumstances there would have been 'no default by the other by reason of failure to perform any term, covenant or condition of the lease.' In the event that Stockton Theatres had remained in possession of the premises during the course of such litigation they could not claim that there was any default in the performance

of the lease. Therefore, Stockton Theatres would not be able to allege a cause of action under the provisions of the attorney's fees clause.

██ "When a landlord commences and maintains against the tenant an unlawful detainer action he does not 'default' or fail to perform any term, covenant or condition of the lease. Even though such litigation may be expensive and annoying to the tenant, there is no 'term, covenant or condition' contained in the lease in the case at bar which forbids the landlord from bringing such an action, and furthermore, the implied covenant of quiet possession has not been violated. (*Agar* v. *Winslow*, 123 Cal. 587 [56 P. 422, 69 Am.St.Rep. 84]; *Black* v. *Knight*, 176 Cal. 722 [169 P. 382, L.R.A. 1918C 319].)

██ "The foregoing discussion leads to the conclusion that Stockton Theatres cannot recover attorney's fees for any legal services performed in the defense of the unlawful detainer suit before there had been a default in the lease by Palermo. This did not occur until December 1st, 1945, when Palermo entered and took possession of the leased premises pursuant to the writ of restitution in the unlawful detainer suit.

██ "Beginning on December 4, 1945, on the day the notice of appeal was filed attorney's services were performed for Stockton Theatres in a proceeding within the scope and purview of the attorney's fees clause in the lease. For the attorney's services performed from that date for the prosecution of the appeal in the unlawful detainer case, Action No. 31,753, Stockton Theatres is entitled to recover a reasonable attorney's fee. In the concluding portion of this memorandum the amount of this will be determined in accordance with the attorney's fee clause which empowers the court to fix a reasonable attorney's fee.

"It has also been argued on behalf of Defendant Palermo that the attorney's fee clause in the lease by its very terms requires that the attorney's fees must be recovered in the same proceeding in which relief is sought for a default. We have again read the attorney's fees clause in the lease with this particular argument in mind. It does seem to be a severe application of the theory of strict construction. In fairness the most that can be drawn from the language of this clause is that the parties contemplated such a procedure would be followed. It should be apparent that the attorney's fee clause creates a right to recover attorney's fees under certain circumstances and also describes a remedial procedure.

The words of the clause do not designate this to be the solitary and exclusive remedy for the enforcement of this contractual right. If the attorney's fee clause were to be so construed then the result would be that under some circumstances a party would have a right without a remedy. The practical result of such a construction would be a partial invalidity of the attorney's fee clause. For these reasons this does not seem to be a proper case for the application of the rule 'expressio unius est exclusio alterius.' ''

We agree with this analysis.

 Plaintiff contends also that its right to recover all attorney's fees claimed herein exists as a matter of law irrespective of any contract. The complaint in the instant case was based upon the attorney's fees provision contained in the lease, and it is clear that the case was tried and determined upon that theory. ''It is a general rule of appellate review, early established and long adhered to, that questions not raised in the trial court will not be considered on appeal.'' (3 Cal.Jur.2d, Appeal and Error, § 140.)

We, therefore, do not believe that plaintiff is entitled to urge this contention for the first time on appeal, but we have nevertheless considered the point and have concluded that there is no merit in it. In support of this contention plaintiff relies chiefly on the cases of *Levitzky* v. *Canning,* 33 Cal. 299, and *Standard Livestock Co.* v. *Pentz,* 204 Cal. 618 [269 P. 645, 62 A.L.R. 1239].

In *Levitzky* v. *Canning,* the plaintiff-lessee sued the defendant-lessor for a breach of the lessor's covenant for quiet enjoyment. Besides the eviction, invasion or disturbance of plaintiff by defendant, defendant had publicly slandered plaintiff's possession and brought two actions at law against plaintiff to recover possession, causing plaintiff to defend himself in the two actions, and causing plaintiff's tenants to quit the premises. Of the damages allowed the trial court also awarded to plaintiff the costs of the two actions brought by defendant, and plaintiff's counsel fees incurred therein. In upholding this award of damages the appellate court said, at page 308:

''The costs of the two actions and the plaintiff's counsel fees were properly allowed as part damages. Where a covenantee is evicted by a stranger, holding a paramount title, by judgment of law, the measure of damages includes the expenses of the covenantee in defending the suit, including fees paid to counsel. (*Swett* v. *Patrick,* 12 Maine, 9; *Pitkin*

v. *Leavitt,* 13 Vt. 379.) Here the actions did not result in an eviction by a paramount title, for they were brought by the covenantor himself, and did not terminate in an absolute eviction, but they worked a breach of the defendant's covenant, as we have seen, and we are unable, on the score of principle, to distinguish between the cases cited and this.''

Factually, this case is not similar to the instant case in that in the instant case we do not have an eviction or breach of the covenant for quiet enjoyment until after the two actions brought by defendant herein against plaintiff herein. In fact, we do not have even an action for a breach of the covenant of quiet enjoyment. Rather, the instant action is one expressly brought upon the clause in the lease providing for attorney's fees. Furthermore, in principle the case is directly in derogation of the settled rule that attorney's fees will not generally be allowed to the prevailing party in the absence of a contract or statute specially providing therefor.

In *Standard Livestock Co.* v. *Pentz* the plaintiff lessee sued the lessor for general and special damages for the breach of the covenant of quiet enjoyment in the lease executed by the defendant. At the time of the execution of the lease there were two mortgages outstanding against the property. After plaintiff had taken and held possession for some time, the mortgagee instituted foreclosure proceedings in which plaintiff and defendant were joined. The defendant lessor and others in the foreclosure action cross-complained against plaintiff, attempting to establish a superior right to plaintiffs. Foreclosure was decreed and the purchaser at the foreclosure sale demanded possession of the premises from plaintiff. Upon plaintiff's refusal to give up the premises plaintiff was removed from the premises under a writ of assistance. In the suit for the breach of the covenant for quiet enjoyment, the trial court excluded from the consideration of the jury any evidence relating to plaintiff's expense in defending his interest in and possession of the premises in the foreclosure action and against the cross-complaints. After reciting the efforts expended on the part of plaintiff in defending itself, the court, at page 632, stated:

''. . . It thus sufficiently appears that the plaintiff herein was put to an outlay of expense for counsel fees and costs in defending its possession, not only against the superior right of the plaintiff in said foreclosure proceeding, but also against

the asserted superior right and claims of the cross-complainants therein, the defendant Pentz herein being one of these. . . . [T]he plaintiff would clearly be entitled to recoup in damages for its outlays in defending its possession against the assertion of a superior title. (1 Tiffany on Landlord and Tenant, p. 548.) It would seem to follow irresistibly that the trial court committed reversible error in its refusal to commit to the jury the right to find some measure of substantial damages as recompense for the plaintiff's outlays in defending its possession, both against the assertion of the superior claims of the plaintiff in the foreclosure proceeding and the asserted superior claims of the cross-complainants therein, of which the defendant herein was himself a direct actor.''

The court in the Pentz case relies upon Tiffany as authority for its holding. Tiffany provides that ''Expenditures on the tenant's part for costs and counsel fees incurred in defending the title against the *paramount* claimant can be recovered, provided at least he notified the lessor to defend the suit and the latter failed to do so.'' In the Pentz case the original action against the lessee was by one claiming paramount or superior title. There, too, the court states at page 633:

''When the foreclosure action was instituted and the plaintiff was made a party thereto and when the plaintiff's acquired lease and its peaceable possession thereunder were put in peril, the plaintiff herein directed the attention of its lessor, Pentz, to such peril and demanded that its lessor take steps to protect it in its peaceable possession of the premises covered by its said lease; but the undisputed evidence shows not only that the defendant Pentz took no action looking toward the plaintiff's protection, but that, on the contrary, he actively joined with his employer and co-defendant, the Bank of California, in the assertion, by way of cross-action, to which he made the plaintiff herein a party, of a superior claim on the part of the said corporation to which he and it sought to subordinate the rights of the plaintiff herein, derived from the lease which he himself had made.''

It will be noted that the cases involving recovery of attorney's fees by a lessee incurred in defending its possession all have to do with defending against one claiming paramount or superior title. Furthermore, the cases all seem to require that the lessee request or notify the lessor to defend the action, and only upon such notification and failure to do so by the lessor do the cases allow recovery of attorney's fees by the lessee. In the instant case the actions were not brought against the

plaintiff-lessee by a third person claiming paramount title, rather they were brought by the lessor himself. Furthermore, the lessor in such a case could hardly be called upon by the lessee to defend the action for the lessee when the lessor himself is the plaintiff. Neither factually nor on principle is the Pentz case authority for plaintiff's right to recover his attorney's fees in the instant case.

In view of what we have hereinbefore stated, it is unnecessary to discuss the other points raised in the brief.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied April 28, 1954, and plaintiff and appellant's petition for a hearing by the Supreme Court was denied May 27, 1954.