[Civ. No. 58480. Second Dist., Div. One. Aug. 29, 1980.]

PAUL J. ERICH et al., Plaintiffs and Appellants, v. LEON L. GRANOFF, Defendant and Appellant.

COUNSEL

Daniel J. Bassett for Plaintiffs and Appellants.

Frieman, Rosenfeld & Zimmerman and Jeffrey F. Gersh for Defendant and Appellant.

OPINION

DUNN, J.*—

I

In January 1978, Paul and Jean Erich filed this action for specific performance of an option to purchase certain residential property locat-

---

*Assigned by the Chairperson of the Judicial Council.

ed in the City of San Dimas, against Leon L. Granoff, doing business as Norma Investment Company. On March 14, 1979, the superior court granted to the Erichs an interlocutory decree of specific performance ordering that respondent convey to appellants the real property and they, in turn, pay the specified purchase price. The court reserved jurisdiction regarding attorney fees, costs and damages.

Findings of fact and conclusions of law by the court and its final judgment were entered on September 20, 1979. The court ruled that "neither side is entitled to attorney fees, court costs, or damages." Appellants appeal from that portion of the judgment in favor of respondent providing that appellants are not entitled to attorney fees, costs or damages. Respondent and cross-appellant Granoff appeals from that portion of the judgment granting specific performance.

## II

Appellants contend that the trial court erred in failing to award them costs, attorney fees and certain itemized expenses because the lease contract provides for award of these items to the injured party. Appellants contend the award should have been made as a matter of equity in order to put the parties in as nearly the same position as possible had the respondent timely performed under the contract.

The respondent contends first that the option was never properly exercised because the letter of June 24, 1977, was an insufficient exercise of the option. Second, the purchaser could perform the option terms only by tendering the option price prior to the expiration of the option. Respondent contends this condition was not met.

## III

Jean Erich was formerly known as Jean Vangelist and was married to William S. Vangelist. In November 1967, Jean and William entered into a written lease agreement with Leon L. Granoff, doing business as Norma Investment Company. The lease agreement contained a 10-year option to purchase a single family residence at 419 Rennell Avenue, in the City of San Dimas. The lease provided that the lessees had the right to assign the lease and the option to purchase. In the event of the exercise of the option to purchase the price was to be $13,000, adjusted by the following formula set forth in the lease: "Should the Lessee, during his full and faithful performance of this Lease desire to purchase the

premises described herein, he has the option to purchase said premises for the sum of Thirteen Thousand ($13,000.00) Dollars in accordance with the formula described hereinafter.

" . . . . . . . . . . : . . . .

"Option Price: The price to be paid for the property in the amount designated on the first page of this lease as the Option Price plus accrued interest from the date hereof at the rate of 7.2% per annum together with such amounts as the lessor may be required to pay for taxes, insurance, assessments and/or for the care and/or improvement of the property. . . . reduced by such amounts as the Lessee may have paid for rent and Security Deposit.

"In determining said Option Price, each payment of rent shall be presumed to apply, first to the accrued interest due from the date of the previous rental payment, second to the reimbursement, for any expenditures made as provided for herein. . . . and the balance shall be applied to the Option Price."

In August 1973, Jean Vangelist remarried and became Jean Erich. On June 24, 1977, Jean Erich and William Vangelist gave the defendant written notice by ordinary mail of their election to exercise the option to purchase the premises. No written reply to this letter was received. Jean Erich, thereupon, in June 1977, telephoned Mr. Granoff and requested the exact price of purchase. He informed her he could not state an exact price, that it was approximately $15,000 and he would inform the escrow agent of the precise amount after an escrow was opened. Mrs. Erich informed Mr. Granoff she had remarried and was told he would sell only to Mr. & Mrs. Vangelist.

Mrs. Erich contacted an attorney who, in turn, contacted Mr. Granoff regarding the sale and purchase of the residence. During several conversations with the attorney over approximately a six-week period, Mr. Granoff indicated he would deal only with Mr. & Mrs. Vangelist. By letter dated August 22, 1977, Granoff informed the attorney that the purchase price was $15,000 without stating how that figure was arrived at. The attorney, by letter of August 3, 1977, demanded an itemization of the computed purchase price; Mr. Granoff complied on September 6, 1977.

Mrs. Erich assigned one-half of her interest in the lease to her husband, Paul J. Erich, and they subsequently applied for and in September 1977 obtained loan commitment approvals from Standard Mortgage Company and Occidental Mortgage Company. The sum of $13,000 was available to them upon their demand. Thereafter, the Erichs commenced an escrow, No. 37963-C, at the South Hills Escrow Corporation. The escrow was scheduled for closing within 30 days, on or before November 6, 1977. Mr. Granoff did not become a party to the escrow advising by letter dated October 11, 1977, that he would not be a party. The letter indicated that title to the residence would be conveyed provided the purchase price was tendered on or before November 11, 1977, and Mr. Granoff returned, unsigned, the escrow demand documents which had been sent to him.

Mr. Granoff, a licensed real estate broker, was never notified by the Erichs that any loan had been approved. On or about November 11, 1977, Mr. Granoff advised the appellants that their 10-year lease had terminated and they were on a month to month tenancy, and he raised their rent from $120 to $200 per month. The Erichs did not pay the rent and Mr. Granoff commenced an action in unlawful detainer, Pomona Municipal Court case No. 30388, obtaining on January 12, 1978, a judgment for possession of the premises and past due rent. The Erichs commenced an appeal. On January 16, 1978, the Pomona court granted a stay of execution on the unlawful detainer judgment pending appeal and upon the condition that rent of $120 monthly be paid and a $5,000 undertaking be posted. These conditions were met by the Erichs.

The within action on March 14, 1979, went to trial resulting in an interlocutory judgment of specific performance ordering that Mr. Granoff convey the real property to the Erichs and that they pay the purchase price.

The lease contract of November 1967, also contained a clause entitled "Enforcement Provision" which reads as follows: "ENFORCEMENT PROVISION: Should it become necessary for the Lessee or the Lessor to institute any action or procedure against the other for the purpose of enforcing any of the rights provided for herein, it is agreed by and between the parties hereto that the injured party shall be reimbursed by the other party for all costs sustained incident to said enforcement of rights. Said reimbursement of costs shall include, but not be limited to, investigative, court and attorney costs."

The trial court, after considering points and authorities on the issue of attorney fees and costs made findings that: "17. Defendant was entitled to attorney fees in the unlawful detainer action and the subsequent appeal of that action, and likewise plaintiffs could be entitled to attorney fees in this action; however, to balance the equities neither side is awarded attorney fees.

"18. Plaintiffs' counsel is not entitled to fees for services rendered as broker.

"19. The fees requested by plaintiffs' counsel in excess of $15,000.00 are unreasonable in view of the nature of the action, the complexity of the lawsuit, and the amount at stake for both parties.

"20. The attorney fee and court costs provision in the lease option agreement does not apply on these facts to the specific performance action. It was beyond the contemplation of the parties, whereas here the request exceeds the amount in controversy." and ordered that neither side was entitled to attorney fees, court costs, or damages.

The attorney for the Erichs had submitted to the court a request for costs expended and for attorney fees in the sum of $15,006.25 based upon 88 hours for services rendered in the within action and 40-1/4 hours in the municipal court action, billed at the rate of $75 per hour and $250 per court appearance. The Erichs, further, requested compensation for expenses and for the differential interest rates between November 1977, the date they allege the conveyance should have occurred, and April 1979, the date of the conveyance.

## IV

■ Respondent's two pronged assertion that the option was never exercised by the appellants and that even assuming it was, the terms of the option were not timely met, has no merit. This position fails to distinguish between an option and the exercise of an option which results in a contract of purchase and sale. ■ An option may be viewed as a continuing, irrevocable offer to sell property to an optionee within the time constraints of the option contract and at the price set forth therein. It is, in other words, a unilateral contract under which the optionee, for consideration he has given, receives from the optionor the right and the power to create a contract of purchase during the life of the option. ■ "An irrevocable option is a *contract*, made for consideration,

to keep an offer open for a prescribed period" (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 126). An option is transformed into a contract of purchase and sale when there is an unconditional, unqualified acceptance by the optionee of the offer in harmony with the terms of the option and within the time span of the option contract. (*Cates* v. *McNeil* (1915) 169 Cal. 697 [147 P. 944].)

A contract must be so construed to, as nearly as is possible ascertain and give effect to the intention which the parties had at the time the contract was entered into. (Civ. Code, § 1636.)[1]

In this regard in the instant case the option contract is silent as to the time and mode of payment of the purchase price. There is no provision to the effect that the payment of the purchase price shall be prior to or coincident with the exercise of the option. Accordingly, the contract cannot be reasonably construed to establish that it was the intention of the parties to require that the tender of the purchase price to the seller had to precede the exercise of the option. Indeed, it is generally recognized that payment of the purchase price in an option contract is, unless otherwise stated in the contract, an obligation to be performed by the optionee in his performance of the conditions of the bilateral contract of purchase and sale which is formed upon the exercise of the option. *Cates* v. *McNeil* (1915) 169 Cal. 697 [147 P. 944], is factually strikingly similar to the instant case and is illustrative of this rule. In *Cates*, defendant's lease granted to them a 10-year option to purchase certain real property for the price of $600 per acre. On the day prior to the expiration of the option the optionees gave notice to the optionor that they were exercising the option and were ready and willing to consummate the purchase. The sellers, as in the instant case, insisted that payment of the purchase price simultaneous with the notice of exercise of the option was an essential prerequisite to constitute an effective acceptance of the option offer. The court disagreed holding that since the clause was silent on the issue of payment of price the optionees had acquired an irrevocable right to purchase the property and the only act necessary to establish a binding contract was the giving of notice of ac-

---

[1]"CONTRACTS, HOW TO BE INTERPRETED. A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (See also, *Healy Tibbitts Constr. Co.* v. *Employers' Surplus Lines Ins. Co.* (1977) 72 Cal.App.3d 741 [140 Cal.Rptr. 375, 97 A.L.R.3d 1258]; and *Advance Medical Diagnostic Laboratories* v. *County of Los Angeles* (1976) 58 Cal.App.3d 263 [129 Cal.Rptr. 723].)

ceptance. Payment was only an essential condition to be met before the optionees would be entitled to a conveyance.[2]

In the instant case the Erichs exercised their option by communicating to Granoff in writing their election to accept his offer.[3] Such notice was sufficient, we hold, to create a binding bilateral contract of sale between the parties. After Mr. Granoff received the notice he had only to calculate the exact sum of money due him as prescribed by the formula stipulated to in the option contract. The tender of the purchase price not being a condition precedent of the option contract and there being no other condition precedent specified in the agreement the exercise of the option validly occurred.

### V

Respondent's second contention that the Erichs did not, under the contract of sale perform within a reasonable time after exercise of the option, is not well taken. The record reflects that any delay caused was not because of dilatory tactics by the Erichs. They gave verbal notice in June and did not receive from the seller the exact amount of the purchase price due, $13,106.77, until approximately September 7, 1977. In late September or early October, the record reflects, that sum was available upon demand from both Occidental Mortgage Company and Standard Mortgage Company. The demand documents were mailed to Norma Investment Company on October 7, 1977, and returned to the escrow company unsigned. In view of this sequence of events the optionees did act as diligently as was reasonably possible under the circumstances.

That part of the judgment of the trial court ordering specific performance is, accordingly, affirmed.

---

[2]See, *Wilson v. Ward* (1957) 155 Cal.App.2d 390 [317 P.2d 1018] for the rule where the contract is not silent on price. In *Wilson*, the option agreement expressly stated that the purchase price was to be paid on or before a specified date. The court held that this was an express condition and because not met expressly as required by the agreement the option was not exercised. (See also, *Riverside Fence Co. v. Novak* (1969) 273 Cal.App.2d 656 [78 Cal.Rptr. 536].)

[3]Option contracts are subject to the statutory provision on acceptance of an offer, hence the option was effectively exercised at the time the acceptance was deposited in the mail. (See, Civ. Code, § 1583; and, *Palo Alto Town & Country Village, Inc.* v. *BBTC Company* (1974) 11 Cal.3d 494 [113 Cal.Rptr. 705, 521 P.2d 1097] and *Estate of Crossman* (1964) 231 Cal.App.2d 370 [41 Cal.Rptr. 800].)

## VI

■ The unjustified failure of an obligor to perform a contract constitutes a breach of that contract. (See Rest., Contracts, § 312; and see 1 Witkin, Summary of Cal. Law (8th ed. 1973) § 616, p. 525.) Moreover, hindrance of the other party's performance operates to excuse that party's nonperformance.[4] ■ And where one party who is willing and able to perform the contract is prevented from so doing by the other party the primary measure of damages is the amount of the obligee's loss; that loss may consist of profits which he would have derived from performance or, reasonable outlay or expenditures toward performance. (*Navarro v. Jeffries* (1960) 181 Cal.App.2d 454 [5 Cal.Rptr. 435]; see also, Civ. Code, § 3300; *Christensen v. Slawter* (1959) 173 Cal.App.2d 325, 334 [343 P.2d 341, 74 A.L.R.2d 567].) These legal principles are applicable to the case at hand. ■ We hold that the Erichs, as parties entitled to specific performance are entitled to judgment for the rent paid to Mr. Granoff from the end of the option period, November 11, 1977, to March 10, 1979, and to judgment for rents and profits from the date they were entitled to a conveyance. They submitted their notice of exercise of the option on June 24, 1977, and in September 1977, were in a posture to deliver the purchase price. During this period Mr. Granoff did not meet his obligation of performance. Had he timely performed by proceeding with the transaction promptly in good faith[5] the same would have been consumated and no rent obligation would have arisen. Similarly, there would have been no undertaking required, the cost of which was $500, to stay the unlawful detainer action instituted by Mr. Granoff in the Pomona Municipal Court. Accordingly, reimbursement to the Erichs of the total of $2,420 which they paid and interest thereon[6] is proper in view of the principle that performance is related back to the performance date of the contract, with the obligees

---

[4]Civil Code section 1511 provides: "The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate:

"1. When such performance or offer is prevented or delayed by the act of the creditor, or by the operation of law, even though there may have been a stipulation that this shall not be an excuse..." and see (*Beverage v. Canton Placer Mining Co.* (1955) 43 Cal.2d 769 [278 P.2d 694]; *Corson v. Brown Motel Investments, Inc.* (1978) 87 Cal. App.3d 422 [151 Cal.Rptr. 385].)

[5]Refusal to perform without good cause is sufficient to constitute lack of good faith performance. (*Shaw v. Union Escrow etc. Co.* (1921) 53 Cal.App. 66 [200 P. 25]; *Brandolino v. Lindsay* (1969) 269 Cal.App.2d 319, 325 [75 Cal.Rptr. 56]; *Kahn v. Lischner* (1954) 128 Cal.App.2d 480, 490 [275 P.2d 539].)

[6]See Civil Code section 3287 and see *Utemark v. Samuel* (1953) 118 Cal.App.2d 313 [257 P.2d 656].

being entitled to the rents, issues and profits which flow from the property, albeit in the form of reasonable rental value from obligees themselves. (See, *Lifton* v. *Harshman* (1949) 90 Cal.App.2d 180, 183 [202 P.2d 858]; *Ellis* v. *Mihelis* (1963) 60 Cal.2d 206, 219 [32 Cal.Rptr. 415, 384 P.2d 7]; *Re* v. *Wells Fargo Bank* (1969) 269 Cal. App.2d 783 [75 Cal.Rptr. 367].)

## VII

■ Appellant's contention that they are entitled to an award of attorney fees and costs has merit. It is the general rule that attorney fees are not recoverable by a prevailing party in an action either at law or in equity unless expressly provided for by contract. (Code Civ. Proc., § 1021; *Gates* v. *Green* (1907) 151 Cal. 65 [90 P. 189]; *Los Angeles Trust etc. Bank* v. *Ward* (1925) 197 Cal. 103 [239 P. 847]; *Stockton Theatres, Inc.* v. *Palermo* (1954) 124 Cal.App.2d 353 [268 P.2d 799].) In the instant case the contract the parties entered into specifically provided for the payment of attorney fees under certain conditions. In our view the appellants have met these conditions. Appellants are the prevailing parties in the instant action for specific performance and, construing the language of the contract in the "ordinary and popular sense" (*Stockton Theatres, Inc.* v. *Palermo* (1954) 124 Cal.App.2d 353, 357 [268 P.2d 799]), they are the "injured parties." An award of attorney fees is a matter within the sound discretion of the trial court and absent a manifest abuse of discretion the determination of the trial court will not be disturbed. (*Shannon* v. *Northern Counties Title Ins. Co.* (1969) 270 Cal.App.2d 686 [76 Cal.Rptr. 7]; *Walters* v. *Marler* (1978) 83 Cal.App.3d 1 [147 Cal.Rptr. 655]; *Clejan* v. *Reisman* (1970) 5 Cal.App.3d 224 [84 Cal.Rptr. 897].) The record reflects that in this case the Erichs were required to engage the services of counsel in order to enforce their rights under the contract and to pursue the matter to trial where they prevailed. Since the contract provided for the payment of reasonable attorney fees, such fees should have been awarded. Major factors the court may consider in determining, in its sound discretion, what constitutes reasonable compensation for an attorney: "...the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time con-

sumed." (*Berry* v. *Chaplin* (1946) 74 Cal.App.2d 669, 679 [169 P.2d 453]; and see *Hurst* v. *Hurst* (1964) 227 Cal.App.2d 859 [39 Cal.Rptr. 162, 19 A.L.R.3d 635].) Considering these factors we hold that the failure to order an award of attorney fees was not an exercise of discriminating judgment and constituted an abuse of discretion. We find that the trial judge should have rendered an order for reasonable attorney fees to compensate appellant's attorney for services rendered to the appellants in preparation for and trial of the instant action and for the costs expended by the Erichs in the prosecution of this cause.

## VIII

The ruling herein being dispositive of appellant's contentions regarding the inadequacy of the findings, they are not discussed. The contentions of appellants Erich regarding other miscellaneous damages such as increased mortgage interest rates, are rejected as being without merit.

The judgment is modified as follows: On page 2 of the judgment, lines 17-18, are deleted in their entirety. Substituted therefor the following paragraph is added: "3. Plaintiffs shall recover from defendant as damages the sum of $2,420 and interest of $237.00 a total sum of $2,657; defendant shall not recover any damages from plaintiffs." Paragraph 4, line 19, is modified by deleting therefrom the words "Each party" appearing at the beginning of said paragraph before the word "shall," and substituting therefor the word "Defendant."

This cause is remanded and the trial judge is directed to calculate and order the payment by respondent of the costs and reasonable attorney fees for appellant's attorney consistent with the remarks set forth in this opinion. In all other respects the judgment is affirmed. It is further ordered that defendant shall pay to plaintiffs as and for attorney fees on this appeal the sum of one thousand five hundred dollars ($1,500) and their costs.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.